Ariel A. Neuman - State Bar No. 241594
   aneuman@birdmarella.com
Aharon B. Kaslow - State Bar No. 322769
   akaslow@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Winston Kevin McKesson - State Bar No. 106068
Law Office of Winston K. McKesson
6080 Center Drive, Ste. 652
Los Angeles, California 90045-1540
Telephone: (310) 242-5889

Attorneys for Defendant Ronald Seymour
Weaver

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-00527-ODW |
| Plaintiff, | **DEFENDANT RONALD S. WEAVER'S NOTICE OF MOTION AND MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT RELATED TO SEARCH WARRANTS AND DISCOVERY PRODUCTIONS** |
| v. | |
| RONALD SEYMOUR WEAVER, et al., | |
| Defendants. | *[Filed Concurrently with Declaration of Ronald S. Weaver; Declaration of Pamela J. Moore; Declaration of Bruce Pixley; and [Proposed] Order]* |
| | Date:    May 9, 2022 |
| | Time:    10:00 a.m. |
| | Crtrm:    5D |
| | Assigned to Hon. Otis D. Wright II |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 9, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Otis D. Wright II, United States District Court Judge, located at 350 W. 1st Street, Los Angeles, California 90012, Courtroom #5D, 5th Floor, Defendant Dr. Ronald S. Weaver ("Dr. R. Weaver") will, and hereby does, move the Court to dismiss the charges against him. To the extent the Court finds it necessary, Dr. R. Weaver further requests that the Court hold an evidentiary hearing, in order to ascertain the full extent of the government's misconduct and determine the appropriate remedy. At a minimum, the evidence seized should be suppressed, as should all fruits of such evidence.

This Motion is made on the grounds that the government engaged in outrageous misconduct and violated the Fourth Amendment of the United States Constitution by:

(1) obtaining unconstitutional general warrants that allowed the government to rummage through Dr. R. Weaver's entire digital life without probable cause; and

(2) failing to comply with the terms of the warrants and thereby causing the widespread dissemination of the most private records of Dr. R. Weaver, his family, his friends, and others, all of which were seized without probable cause and in violation of the terms of the warrants, and all of which were then widely disseminated without redaction.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the accompanying Declarations of Pamela J. Moore, Bruce W. Pixley, and Defendant Dr. Ronald S. Weaver, and the exhibits thereto, the Indictment, and such other and further argument and evidence as may be presented to the Court at the hearing on this matter. This Motion is also based on the Constitutional violations discussed at length in Sara Soulati and Dr. R. Weaver's

1

1   Joint Motion to Sever or Suppress, which is incorporated by reference and which

2   discusses the government's unlawful seizure and dissemination of Dr. R. Weaver's

3   privileged attorney-client communications, including in a manner which makes

4   claw-back virtually impossible. *See* Dkt. 396.

5

6   DATED:  February 7, 2022          Ariel A. Neuman

7                                     Bird, Marella, Boxer, Wolpert, Nessim, Drooks,
                                       Lincenberg & Rhow, P.C.

8

9                                     By:    */s/ Ariel A. Neuman*

10                                            Ariel A. Neuman
                                             Attorneys for Defendant Ronald S. Weaver

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES............................................. 1

I.    INTRODUCTION ............................................................................ 1

II.   BACKGROUND ............................................................................ 4

    A.    Apple and Google Accounts Contain Far More Than Just Emails........ 4

    B.    The Search Warrants Demand the Entire Contents of Dr. R.
        Weaver's Apple and Google Accounts ................................................. 5

        1.    *The Probable Cause Showing Was For Emails Only* .................. 5

        2.    *The Government Did Not Tell the Magistrates the*
            *Warrants Demanded All Information in the Accounts* ................ 5

        3.    *The Items to Be Seized Were a Limited Set* ................................ 6

        4.    *The Court-Ordered Search Procedures* ...................................... 6

    C.    Apple and Google Produce All Records and Information
        Associated With the Accounts Pursuant to the Search Warrants ........... 7

    D.    The Government Seized and Produced Thousands of Dr. R.
        Weaver's Private Records Outside the Scope of the Warrants.............. 7

    E.    The Government Did Nothing to Rectify the Widespread
        Dissemination of This Material ............................................................ 10

III.  ARGUMENT ............................................................................... 10

    A.    The Search Warrants Were Unconstitutional General Warrants
        and Not Supported By Probable Cause................................................. 10

    B.    The Warrants Unconstitutionally Allowed the Government to
        Rummage Through Dr. R. Weaver's Entire Life................................... 12

    C.    The Government Violated the Terms of the Search Warrants and
        Seized Virtually Everything................................................................. 16

    D.    Dismissal of the Indictment is Warranted............................................. 17

    E.    At a Minimum, Everything Seized Pursuant to the Warrants
        Should be Suppressed ......................................................................... 21

IV.   CONCLUSION ............................................................................. 25

1

## **TABLE OF AUTHORITIES**

2

3                                                                                          **Page(s)**

4  **Federal Cases**

5  *Andresen v. Maryland*,
6       427 U.S. 463 (1976) ................................................................ 10, 18

7  *United States v. Campos*,
8       221 F.3d 1143 (10th Cir. 2000) ............................................... 12

9  *United States v. Chapman*,
     524 F.3d 1073 (9th Cir. 2008) ................................................. 19
10
    *United States v. Chen*,
11       979 F.2d 714 (9th Cir. 1992) ............................................... 21, 24

12
    *United States v. Christie*,
13       717 F.3d 1156 (10th Cir. 2013) ............................................. 13

14
    *United States v. Cornejo*,
15       1996 WL 107271 (N.D. Cal. Mar. 5, 1996) ......................... 20

16  *United States v. Debbi*,
17       244 F. Supp. 2d 235 (S.D.N.Y. 2003) ................................... 22

18  *Donnelly v. DeChristoforo*,
         416 U.S. 637 (1974) ............................................................... 20
19
    *Illinois v. Gates*,
20       462 U.S. 213 (1983) ................................................................. 10

21
    *United States v. Kojayan*,
22       8 F.3d 1315 (9th Cir. 1993) ................................................. 19, 20

23
    *United States v. Lopez*,
24       4 F.3d 1455 (9th Cir. 1993) ................................................. 17, 18

25
    *United States v. McClintock*,
26       748 F.2d 1278 (9th Cir. 1984) ............................................... 17

27  *United States v. Metter*,
28       860 F. Supp. 2d 205 (E.D.N.Y. 2012) ............................ 22, 24, 25

*United States v. Navarro*,
    2019 WL 3877699 (D. Ariz. July 12, 2019) ................................................. 14, 24

*In re Nextel Cellular Tel.*,
    2014 WL 2898262 (D. Kan. June 26, 2014) ................................................. 11, 14

*United States v. Ramos*,
    923 F.2d 1346 (9th Cir. 1991) .......................................................................... 10

*United States v. Rettig*,
    589 F.2d 418 (9th Cir. 1978) ................................................................. 21, 23, 24

*United States v. Ross*,
    372 F.3d 1097 (9th Cir. 2004) .......................................................................... 19

*United States v. Schesso*,
    730 F.3d 1040 (9th Cir. 2013) .................................................................... 13, 15

*Matter of Search of ODYS LOOX Plus Tablet Serial No.*
    *4707213703415 In Custody of United States Postal Inspection Serv.,*
    *1400 New York Ave NW, Washington, DC*,
    28 F. Supp. 3d 40 (D.D.C. 2014) ...................................................................... 14

*United States v. Sedaghaty*,
    728 F.3d 885 (9th Cir. 2013) ........................................................................... 21

*United States v. Tamura*,
    694 F.2d 591 (9th Cir. 1982) ............................................................... 12, 16, 23

*Matter of the Search of Info. Associated with [redacted]@mac.com that*
    *is Stored at Premises Controlled by Apple, Inc.*,
    25 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................ 15

*United States v. Tucker*,
    8 F.3d 673 (9th Cir. 1993) ................................................................................ 17

*United States v. Weber*,
    923 F.2d 1338 (9th Cir. 1990) .......................................................................... 10

*United States v. Wei Seng Phua*,
    2015 WL 1281603 (D. Nev. Mar. 20, 2015) ..................................................... 14

*United States v. Whitten*,
    706 F.2d 1000 (9th Cir. 1983) .......................................................................... 11

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT

**Other Authorities**

United States Constitution, Fourth Amendment ..............................................*passim*

United States Constitution, Sixth Amendment.................................................17, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Videos of Dr. Ronald S. Weaver's sexual encounters, his private communications about the death of his daughter, photographs of his other daughter at life's milestone events, his wife's medical records, his private (and privileged) communications with his wife, and his friends' personal financial information, were among the reams of irrelevant and intimate data that the government seized and produced to every defendant in this case. The seizures were without probable cause and in flagrant disregard of the terms of the two search warrants by which the investigators obtained the material. The government's misconduct in relation to these search warrants is outrageous. The government was alerted to the inclusion of this material in the discovery over a year ago and did nothing. Whether an intentional effort to embarrass and intimidate Dr. R. Weaver, or a simple lack of due care to the responsibilities of being an FBI agent and DOJ prosecutor, the result was the wide-spread dissemination of irrelevant and highly sensitive material—without redaction—to every defendant and lawyer in this case.

This misconduct is part and parcel of a pattern of constitutional violations against Dr. R. Weaver. As detailed in the contemporaneously filed Joint Motion of Ms. Soulati and Dr. R. Weaver to Suppress and Sever, in relation to a *third* search warrant, the government *also* seized, reviewed, and disseminated to every defendant in this case Dr. R. Weaver's *attorney-client privileged materials* without Bates-numbers, making it virtually impossible to claw back that material.  *See.* Dkt. 396. That Motion is incorporated by reference, and together with the facts and law set forth below, demonstrates the government's complete abandonment of its duties and responsibilities to comply with the law and with court orders in this case. Together, they draw a picture of government investigators run amok, misleading magistrate judges, failing to comply with search warrant protocols, and acting with complete disregard for the constitutional rights of Dr. R. Weaver.

1

The search warrants at issue in this brief were ostensibly designed so that the government could obtain emails from Dr. R. Weaver's Apple and Google accounts that would be related to the instant healthcare investigation. But rather than limit itself to just emails, and rather than limit itself to the categories of material it was permitted to seize, the government seized tens of thousands of irrelevant files associated with these accounts which have absolutely nothing to do with this case.

The government then produced almost all of it to every defendant and lawyer in the case *without redaction*. Examples include:

- Multiple videos showing Dr. R. Weaver (and others) engaged in sexual intercourse and other intimate acts;

- 150+ personal emails between Dr. R. Weaver and his adult son (who has nothing to do with this case), including those in which father and son discuss divorce, the death of their daughter/sister, and various other sensitive subjects;

- Dr. R. Weaver's wife's personal medical records, as well as his own;

- 500+ emails concerning the National Association of Guardsmen, including bank account balances and information about whether chapters had paid their dues, which were sent to Dr. R. Weaver in his capacity as Treasurer of the Los Angeles Chapter of National Guardsmen (and which has no connection to this case);[1]

- 800+ personal and privileged emails between Dr. R. Weaver and his estranged wife (who has nothing to do with this case);

- 350+ personal emails between Dr. R. Weaver and his girlfriend (who has nothing to do with this case);

- Photographs of Dr. R. Weaver's daughter at various milestone events (such as baptism);

- Communications and records regarding Dr. R. Weaver's massage appointments;

- Records about Dr. R. Weaver's vacations, including communications

---

[1]   The National Association of Guardsmen, or The Guardsmen for short, is an organization composed of over 10,000 college-degreed black men whose primary mission is to improve the quality of life within their communities and enhance educational and economic opportunities for all African-Americans.

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT

with travel agents;

- Copies of his daughter's homework assignments; and

- Records showing Dr. R. Weaver's spending on personal items, including electronic devices, home appliances and bedding, newspaper/magazine subscriptions,  repair services for his wife's vehicle, and men's health supplements related to sexual activity.

The execution of the search warrants at issue were problematic in every respect. **First**, the warrants on their face were **unconstitutional general warrants** that allowed the government to rummage through the entirety of Dr. R. Weaver's Apple and Google accounts, without even an attempt to show probable cause for anything beyond emails. Contrary to basic FBI training and standards, and without warning to the magistrate judges, the warrants demanded ***all information*** associated with the accounts, rather than just emails. These accounts contain reams of data beyond emails, including videos, photographs, documents, app-related records, etc.

**Second**, once the government obtained all this data, it made no serious effort to segregate and seize only the material that fell within the categories and timeframe delineated in the warrants. Rather, the government appears to have ***seized almost everything*** and turned it over to every defendant in the case (save some potentially privileged material). The government seized and produced to every defendant in the case ***thousands of private and sensitive videos, photographs and documents comprising virtually every aspect of Dr. R. Weaver's personal life and that of his family***, without redaction, and notwithstanding that it all falls outside the scope of the warrants.

**Third**, when alerted to this widespread distribution without redaction, the government did nothing for more than a year, and then just two days ago made a minimal effort to claw-back eight of the most intimate videos.

The government's flagrant disregard of the terms of the search warrants is both astounding and inexcusable. The fact that the warrants at issue are general warrants that allowed over-seizure of personal data, combined with the

1   government's failure to execute the warrants in good faith, together with the
2   government's seizure and dissemination of Dr. R. Weaver's attorney-client
3   privileged communications detailed in the accompanying Joint Motion, warrant
4   dismissal of the indictment against Dr. R. Weaver. Should the Court find that
5   dismissal is not warranted based on the record before it, Dr. R. Weaver requests an
6   evidentiary hearing so the Court can determine how these constitutional violations
7   occurred and fashion an appropriate remedy. At a minimum, all evidence seized
8   through these warrants, and any fruits derived therefrom, should be suppressed.

9   **II.    BACKGROUND**

10          **A.    Apple and Google Accounts Contain Far More Than Just Emails**

11          A Google account includes *over 51 types of data* associated with a particular
12   account name. *See* Declaration of Bruce Pixley ("Pixley Decl.") ¶ 13; *see also id.* at
13   Ex. B. Such data is not limited to emails, but also includes documents, videos,
14   photographs, etc. stored in the "cloud," and any information stored in the myriad of
15   Google-based applications that are linked to the same Google account (*e.g.*,
16   YouTube, Google Drive, Gmail, Google Play, Google Music, Google Maps, etc.).
17   *See id.* at Ex. B. Access to an individual's Google account will often give access to
18   virtually all the data on a person's cell phone that is stored in the cloud, if the phone
19   uses the Android operating system.

20          Apple accounts similarly include *at least 23 different types of data* associated
21   with a particular account name. *See id.* at ¶ 14; *see also id.* at Ex. C. Like a Google
22   account, an Apple account is associated with a myriad of Apple-based applications
23   beyond email, such as Apple's App Store, iCloud, iMessage, Apple Music, Apple
24   TV+, etc. *Id.* And like a Google account is used on Android cell phones, an Apple
25   account is often used on iPhones to access virtually all of the data contained therein
26   that is stored in the cloud.

27

28

**B.** **The Search Warrants Demand the Entire Contents of Dr. R. Weaver's Apple and Google Accounts**

During the course of its investigation into purported Medicare fraud, the government obtained two search warrants for digital data related to Dr. R. Weaver. *See* Moore Decl., Ex. A (Search and Seizure Warrant of Account Associated with rsweavermd@me.com ("Apple SW")); Moore Decl., Ex. B (Search and Seizure Warrant of Account Associated with ronaldweavermd@gmail.com ("Google SW")). Both warrants were supported by the same affidavit from FBI Special Agent Pamela Schwartz. *See* Moore Decl., Ex. A at 1-14; *id.* at Ex. B at 1-14.

**1.** *The Probable Cause Showing Was For Emails Only*

SA Schwartz's affidavit describes an alleged scheme similar to that charged in the indictment, namely, a scheme by individuals associated with what SA Schwartz calls the "GCC Clinic," involving prescriptions for external counterpulsation ("ECP") that were purportedly medically unnecessary, recruitment of patients who allegedly did not need the treatment, a regimen of unnecessary tests, falsification of records, and fraudulent billing of Medicare, Medi-Cal, and Medi-Cal managed care organizations. *Id.* at Ex. A at 23-37; *id.* at Ex. B at 23-37.

As to the Apple and Google accounts, the affidavit contains a section that purports to detail "probable cause that evidence to be seized is located in the subject accounts." *Id.* at Ex. A at 58-61; *id.* at Ex. B at 58-61. That section arguably sets forth probable cause to obtain Dr. R. Weaver's email correspondence related to the alleged scheme, but does not address any other type of data in the Apple or Google accounts. *See id.* SA Schwartz's entire discussion relates to accessing Dr. R. Weaver's emails and "e-mail accounts," suggesting to the magistrates that emails was what the government was after. *See, e.g.*, *id.* at Ex. A at 62-63; *see also id.* at Ex. B at 62-63 (same).

**2.** *The Government Did Not Tell the Magistrates the Warrants Demanded All Information in the Accounts*

Despite the fact that the effort to show probable cause was limited to certain

1    **emails**, the search warrants demanded the ***entirety*** of Dr. R. Weaver's Apple and

2    Google accounts. The government never explained the difference to the magistrates.

3         On December 18, 2018, Magistrate Judge Maria A. Audero was presented

4    with and signed a search warrant commanding Apple, Inc., to provide the

5    government with "All contents of all wire and electronic communications associated

6    with [Apple account rsweavermd@me.com]," including but not limited to "all

7    emails, communications, or messages of any kind," ***and*** "***all other records and***

8    ***information***" associated with the account. Moore Decl., Ex. A at 8-9 (emphasis

9    added). The first category of data—wire and electronic communications—was

10   "limited to that which occurred on or after January 1, 2010." *Id*. at 8.  No date

11   restrictions were put on the second category of data to be produced, *i.e.*, "all other

12   records and information." *Id.* at 9. Thus, the warrant commanded Apple to turn over

13   every bit of data associated with Dr. R. Weaver's Apple account.

14        The next day—December 19, 2018—Magistrate Judge Michael R. Wilner

15   was presented with and signed a search warrant directed at Google LLC, with the

16   same directions as to Google account ronaldweavermd@gmail.com.  Moore Decl.,

17   Ex. B at 8-9.  This warrant commanded Google to turn over to the government every

18   bit of data associated with Dr. R. Weaver's Google account.

19              **3.**      *The Items to Be Seized Were a Limited Set*

20        The warrants limited what the government could seize to fourteen categories

21   of information that would constitute "evidence, contraband, fruits, or

22   instrumentalities of" particular crimes, all specifically related to the activity at GCC

23   and the prescribing/billing of EECP prescriptions. Moore Decl., Ex. A at 113-117;

24   *id.* at Ex. B at 113-117.

25              **4.**      *The Court-Ordered Search Procedures*

26        The warrants contain no instructions on how the government was to go about

27   searching the entirety of Dr. R. Weaver's Apple and Google accounts to locate and

28   segregate evidence the government was allowed to seize. The affidavit simply stated

1    that "[u]pon receipt of the information [from Apple and Google], law enforcement

2    agents and/or individuals assisting law enforcement and acting at their direction will

3    review that information to locate the items" to be seized. *See* Moore Decl., Ex. A at

4    17; *id.* at Ex. B at 17.

5         The warrants contained a privilege review process for "wire and electronic

6    communications," but not for other records and information included in the two

7    accounts. Like the probable cause showing, this falsely suggested to the magistrate

8    judges that the government was only planning to obtain emails, rather than the

9    entirety of the Apple and Google accounts.

10        The warrants instructed that once the government had finished all of its

11   reviews, it must create copies of all records seized pursuant to the warrant, and then

12   seal and not review the original productions received from Apple and Google,

13   including all the data that was not within the scope of the warrants. Moore Decl.,

14   Ex. A at 7; *id.* at Ex. B at 7.

### C.   Apple and Google Produce All Records and Information Associated With the Accounts Pursuant to the Search Warrants

Apple and Google complied with the warrants and produced voluminous

records, dating back in some instances to March 1999. *See* Moore Decl., Exs. C-D.

Apple and Google produced to the government an astounding combined 155.2

gigabytes of data. *Id.* ¶¶ 5-6. The records included tens of thousands of emails,

photographs, videos, spreadsheets and other types of files. *Id.*

### D.   The Government Seized and Produced Thousands of Dr. R. Weaver's Private Records Outside the Scope of the Warrants

Among the 83,783 files that the government seized and produced to every

defendant is an enormous volume of material that falls outside the 14 categories of

items to be seized in the warrants, including thousands of intimate emails, videos,

photographs, documents, and other pieces of data that have absolutely nothing to do

with the case. *See* Moore Decl., ¶¶ 7-9; *id.* Ex. E.[2] The government seized material outside of the timeframe it established in the warrant for communications, *i.e.*, material prior to January 1, 2010, and appears to have seized virtually everything.[3] At about 5pm on the day this filing was due, the government for the first time indicated that it did run search terms on the seized materials (Dkt. 395 at 4); however, the fact that Dr. R. Weaver's most private, intimate, and irrelevant documents were produced indicates that this process was highly defective, at best.

The seized material includes a mind-boggling volume of Dr. R. Weaver's private, sensitive, and potentially embarrassing records (as well as a lot of spam, junk, and corrupt files), all of which is irrelevant to this case. The following is a non-comprehensive list of examples of the types of items that the government seized and produced to every defendant:

- Multiple videos showing Dr. R. Weaver (and others) engaged in sexual intercourse and other intimate acts;

- Multiple pornography videos and other explicit content attached to irrelevant emails;

- Thousands of personal photographs of Dr. R. Weaver and his family, including pictures of Dr. R. Weaver's daughter taken in 2000, pictures of her baptism in 2002, and pictures of her eighth birthday in 2007, and countless other pictures of Dr. R Weaver's family members;

- 800+ personal and privileged emails between Dr. R. Weaver

---

[2]   On May 1, 2020, the Privilege Review Team (also referred to elsewhere as the "Filter Team" or "Taint Team") produced to just Dr. R. Weaver's counsel another 51,379 documents from the Google/Apple productions that had been flagged as potentially privileged by the Privilege Review Team, asking that Dr. R. Weaver's counsel conduct a privilege review of the material. *Id.* at ¶¶ 43-44; *id.* at Exs. U-V. Most of these were also outside the scope of the warrant.

[3]   Despite the warrants' instruction that the government create copies of all records seized pursuant to the warrants, and then seal any records not seized by the government (Moore Decl., Ex. A at 7; Ex. B at 7), the government has told counsel that it has "no records" of any material obtained from Google or Apple which it did not seize or flag as potentially privileged. *See id.*, Ex. T.

and his estranged wife (who has no connection to this case);

- 350+ intimate and personal emails between Dr. R. Weaver and his girlfriend (who also has no connection to this case);

- 150+ personal emails between Dr. R. Weaver and his adult son (who has no connection to this case), including those in which they discuss divorce, the death of their daughter/sister, and various other sensitive subjects;

- Dr. R. Weaver's wife's personal medical records;

- Dr. R. Weaver's personal medical records;

- Thousands of emails relating to Dr. R. Weaver's longtime involvement with the Los Angeles Chapter of the National Association of Guardsmen, including records related to the organization's management and finances;

- Communications and records regarding Dr. R. Weaver's massage appointments;

- Hundreds of videos and photos of the sorts of everyday activities people document on their cell phones;

- Enormous volumes of financial information, including hundreds of records containing detailed information about Dr. R. Weaver's brokerage accounts, private investments, and stock-trades, as well as related communications with his accountants and financial advisors, credit card and bank statements, tax documents, and utility, cable and phone bills;

- Copies of his daughter's homework assignments;

- Records of Dr. R. Weaver's gambling debts and winnings;

- Records regarding attempts by Dr. R. Weaver and his wife to purchase a vacation home in Mexico;

- Records about Dr. R. Weaver's vacations, including flight and hotel reservations, leisure activity records, and communications with travel agents;

- Records showing Dr. R. Weaver's spending on numerous personal items, including electronic devices, home appliances and bedding, newspaper/magazine subscriptions, repair services for his wife's vehicle, and men's health supplements related to sexual activity;

- A list of Dr. R. Weaver's classmates from 1974.

Moore Decl., Exs. G-S.

Basic searches of the 83,783 items seized by the government and produced to

9

all defendants demonstrates that *less than 6%* **contain at least one of the following broad, relevant search terms**: "Global Cardio Care," "GCC," "@globalcardiocare.com," "Soulati," "Carlish," "Elkin," "Scheele," "Shetty," "cardiologist," "EECP," "ECP," "Inglewood," "angina," "diagnosis," "prescription," or "Medicare." *Id.* ¶ 13. The remaining 78,929 items do not contain any of those words, suggesting they have nothing to do with the government's investigation. *Id.* In short, the government appears to have done nothing meaningful to segregate material within the scope of the warrant from material outside the scope of the warrant, and just seized and produced virtually all of it.

### E.      The Government Did Nothing to Rectify the Widespread Dissemination of This Material

In 2019, counsel corresponded with the assigned prosecutors and asked them to review the widespread dissemination of this most private material which fell well outside the scope of the search warrant. *See* Moore Decl., Ex. T. They never responded and made no effort to correct or restrict the distribution. Two days before the deadline for substantive motions, after counsel again raised the issues discussed herein, the government for the first time requested that the other defendants return eight videos it characterized as "sensitive and personal."  *Id.* at Ex. W.

## III.   ARGUMENT

### A.      The Search Warrants Were Unconstitutional General Warrants and Not Supported By Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by preventing "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (internal quotation marks and citations omitted). Accordingly, the Fourth Amendment prohibits searches without probable cause. U.S. Const. Amend. IV. Probable cause requires a fair probability that contraband or evidence of crime will be found at a particular location. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit in support of a search warrant must

therefore demonstrate "reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." *United States v. Ramos*, 923 F.2d 1346, 1351 (9th Cir. 1991), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001). A warrant must be no broader than the probable cause upon which it is based. *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). For instance, where a structure contains two residences or where two residences share a lot, there must be independent probable cause to search each residence. *United States v. Whitten,* 706 F.2d 1000, 1008 (9th Cir. 1983).

Here, at best, the government had probable cause to search through emails associated with Dr. R. Weaver's Apple and Google accounts. But the warrants called for the production of not just emails and related items, but "all other records and information" associated with the accounts. Moore Decl., Ex. A at 9; *id.* at Ex. B at 9. **The government never told the magistrate judges the scope of material that Apple and Google would turn over in response to such an order.** Indeed, the affidavits suggested only emails were to be obtained, but the language of the warrants demanded the entirety of the data in the accounts.

This was no accident. The warrants as drafted are gross departures from the FBI's standard practices, and evince a complete disregard for Dr. Weaver's privacy and any attempt to seize only relevant documents. *See* Pixley Decl. ¶¶ 16-19; 21-26. Law enforcement agents (including the FBI) are for this very reason specifically trained to avoid phrases such as "all records and information" (without specific justification) when requesting information from a provider such as Google or Apple. *Id*. at ¶¶ 17, 19. They are trained that many of the categories of data in these accounts are simply not relevant to criminal investigations. *Id*. at ¶¶ 15-16, 19.

The search warrants were akin to general search warrants allowing agents to seize everything in Dr. R. Weaver's cell phones and then rummage through them. As another court explained in denying a government application for a warrant to search a cell phone, "'just as probable cause to believe that a stolen lawnmower may

be found in a garage will not support a warrant to search an upstairs bedroom,'
probable cause to believe [evidentiary] communication[s] may be found in phone's
the mail application will not support the search of the phone's Angry Birds
application." *In re Nextel Cellular Tel.*, 2014 WL 2898262, at *13 (D. Kan. June 26,
2014) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). Here, probable
cause to believe communications related to the so-called GCC Clinic might arguably
be found in emails did not support the search of videos, photographs, or other data
contained in Dr. R. Weaver's Apple and Google accounts.

These were exactly the type of general warrants the Ninth Circuit warned
about in *United States v. Comprehensive Drug Testing, Inc.*, which "render[] the
Fourth Amendment irrelevant." 621 F.3d 1162, 1176 (9th Cir. 2010) ("*CDT III*").
Indeed, the Fourth Amendment was written "in response to the evils of general
warrants—those that allow such exploratory rummaging." *United States v. Campos*,
221 F.3d 1143, 1147 (10th Cir. 2000). The warrants here did not comply with these
fundamental constitutional restrictions.

### B. The Warrants Unconstitutionally Allowed the Government to Rummage Through Dr. R. Weaver's Entire Life

The unconstitutional nature of the search warrants arguably could have been
ameliorated if they had contained ***some*** procedural mechanisms to prevent the
government from exploring every aspect of Dr. R. Weaver's most private affairs
which have nothing to do with the issues the government claimed to be
investigating. The warrants contained nothing of the sort.

The warrants give no instruction to the Search Team as to how the
government was to locate items to be seized within the scope of the warrants despite
clear instruction from the Ninth Circuit that warrants for electronically stored
information should include "procedures [] to maintain the privacy of materials that
are intermingled with seizable materials, and to avoid turning a limited search for
particular information into a general search of office file systems and computer

databases." *CDT III,* 621 F.3d at 1170; *see also United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982). Here, the warrants did not require the government to do any sort of targeted or key-word searches of the data produced by Apple and Google, or otherwise specify any procedure the government had to go through in order to find material within the scope of the warrant.

This again was no accident. This lack of instruction is contrary to FBI training and best practices. *See* Pixley Decl. ¶¶ 16-19. Search procedures are necessary to protect the privacy of the individual whose digital data is being obtained and avoid over-seizing data, since much of it is often not responsive to the search warrant. Pixley Decl. ¶ 21. Without search procedures, investigating agents or officers are able to review every single file, which results in reviewing information far beyond what is responsive to the warrant.  *See Id.*

The warrants here made no effort to "strik[e] the right balance between the government's interest in law enforcement and the rights of individuals to be free from unreasonable searches and seizures." *CDT III,* 621 F.3d at 1177. Rather, they permitted exactly that which is proscribed: "The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect." *Id.* "A warrant isn't ever supposed to be a license for just a general rummaging." *United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013) (citation omitted). Here, the government gained such access and subsequently gave it to every other defendant.

Whether a particular warrant strikes "the proper balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures of electronic data" turns, in part, on whether the search involves an "over-seizure of data that could expose sensitive information about other individuals not implicated in any criminal activity," and/or "sensitive information about [the defendant] other than" his involvement in the alleged criminal activity under investigation. *United States v. Schesso*, 730 F.3d

1040, 1049-50 (9th Cir. 2013). To strike this balance, courts generally require the government to include some

> appropriate protocol delineating what procedures will be followed to address these Fourth Amendment issues. A protocol for forensic review of a device that stores data electronically must make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

*United States v. Wei Seng Phua*, 2015 WL 1281603, at *7 (D. Nev. Mar. 20, 2015); *see also Matter of the Search of Apple iPhone*, 31 F. Supp. 3d 159, 165–68 (D.D.C. 2014) (denying cell phone search warrant where "application indicated that [government] would take and sift through massive amounts of data for which it had no probable cause to seize in the first place," and requiring search protocol because "an explanation of the scientific methodology the government will use to separate what is permitted to be seized from what is not, will explain to the Court how the government will decide where it is going to search—and it is thus squarely aimed at satisfying the particularity requirement of the Fourth Amendment"); *United States v. Navarro*, 2019 WL 3877699, at *12 (D. Ariz. July 12, 2019) (same); *In re Nextel Cellular Tel.*, 2014 WL 2898262, at *14 (D. Kan. June 26, 2014) (denying search warrant application because "search protocol" failed to adequately describe search methodology); *In re U.S.'s Application For A Search Warrant To Seize & Search Elec. Devices From Edward Cunnius,* 770 F. Supp. 2d 1138, 1150 (W.D. Wash. 2011) (denying application which sought "the broadest warrant possible—the authority to search every single thing" on an electronic device in part because it contained none of the "procedural safeguards" recommended by the Ninth Circuit in

1    *CDT III*[4]; *Matter of Search of ODYS LOOX Plus Tablet*, 28 F. Supp. 3d 40, 44

2    (D.D.C. 2014) (denying search warrant for not including adequate search protocol).

3             Indeed, in an order denying a warrant application similar to those at issue

4    here—"for e-mails and all other content related to [an Apple] e-mail account"—

5    another court denied the warrant because it contained no protocol to limit the

6    government's rifling through reams of data for which it had no probable cause.

7    *Matter of the Search of Info. Associated with [redacted]@mac.com that is Stored at*

8    *Premises Controlled by Apple, Inc.*, 25 F. Supp. 3d 1, 6 (D.D.C. 2014).

9             Here, the warrants allowed the broad seizure of every bit of data in Dr. R.

10   Weaver's Apple and Google accounts, and allowed the government to rummage

11   through it all without restriction. They made no effort to strike a balance of any sort.

12   There were no restrictions on what the government could look at, and no instruction

13   on how the Search Team or Privilege Review Team would locate documents

14   responsive to the warrant. It was a free-for-all, with agents and prosecutors allowed

15   to look at Dr. R. Weaver's and his family's and friends' most intimate affairs

16   without  restriction—exactly what other courts have acted to prevent and exactly

17   what FBI training is intended to guard against, *see* Pixley Decl., ¶¶ 21-23, 26.

18            Importantly, the magistrates were not told what they were ordering. As

19   discussed above, the probable cause showing and discussion in the affidavit in

20   support of the warrants was all about emails, and the FBI agent never explained that

21   the government was going to get much more. ***The magistrates were misled to***

22

23   ————————————

    [4]    The Washington District Court also noted that "[t]he government's proposed

24   use of hash values"—like the government said it *might* do here (Moore Decl., Ex. A

     at 109-110; *id.*, Ex. B at 109-110)—"does not necessarily narrow the scope of the

25   search requested. Specifically, although 'hash values' can be used to exclude files

     that do not interest the government such as a digital device's operating system, they

26   can also be used to search and find evidence outside the scope of the warrant

27   automatically and systematically."  *In re U.S.'s Application For A Search Warrant*

     *To Seize & Search Elec. Devices From Edward Cunnius*, 770 F. Supp. 2d at 1152.
28

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT

1 ***believe that they were signing warrants for emails, when in fact they were giving***
2 ***the government access to Dr. R. Weaver's entire digital life***.

3      The analysis required by *Schesso* is straightforward here:  There was an
4 "over-seizure of data that [*did*] expose sensitive information about other individuals
5 not implicated in any criminal activity," *and* "sensitive information about [Dr. R.
6 Weaver] other than" his involvement in the alleged criminal activity under
7 investigation. *United States v. Schesso*, 730 F.3d at 1049-50.

8      **C.      The Government Violated the Terms of the Search Warrants and**
           **Seized Virtually Everything**
9
10     After securing these general warrants, the government then did virtually
11 nothing to segregate materials subject to seizure from materials that were not, and
12 simply seized vast reams of data that have nothing to do with this case. Although the
13 warrants specified 14 categories of items subject to seizure, the government appears
14 to have seized almost everything that Apple and Google turned over in response to
15 the overbroad search warrants. The government made no effort to restrict its
16 seizures to those 14 categories, or to the January 1, 2010 forward timeframe
17 specified in the warrants for e-mail, or even just to e-mails and related data.

18     Generally, "in searches made pursuant to warrants only the specifically
19 enumerated items may be seized." *United States v. Tamura*, 694 F.2d 591, 595 (9th
20 Cir. 1982) (citation omitted). The government here told the magistrate that it would
21 only "seize content records that are within the scope of the search warrant," and
22 would separate, seal and maintain copies of all items not seized. Moore Decl., Ex. A
23 at 6-7; *id.* at Ex. B at 6-7.

24     None of this happened. The government did not seize only what it had
25 permission to seize. It seized essentially everything it could get its hands on. And it
26 did not segregate anything other than potentially privileged material. The
27 prosecutors have confirmed as much: There are no records of material that
28 Google/Apple turned over that was ***not*** seized. *Id.* at Ex. T. Compounding this

outrageous misconduct, the government then turned over most everything, without restriction, to every defendant. *Id.* at ¶ 7. Thus the government did not comply with the most basic requirements of executing a search warrant. *See* Pixley Decl., ¶¶ 16-17, 20-21. The government even ignored the January 1, 2010 cutoff date it included in the warrant, and seized and produced hundreds of items dated between 1999 and 2009, including emails from this time period. *See* Moore Decl., at ¶ 12; *id.* at Ex. F.

And even after the prosecutors were alerted to the vast over-seizure, the government waited until two days before this Motion was due to claw back a mere eight videos.

### D.   Dismissal of the Indictment is Warranted

As detailed in the contemporaneously filed Joint Motion of Ms. Soulati and Dr. R. Weaver to Suppress and or Sever, which is incorporated herein by reference, the government's outrageous conduct goes far beyond violating the terms of these two search warrants to seize and disclose the most intimate and private details of Dr. R. Weaver's and his family's and friends' personal lives.  The government, in a separate search warrant, also violated Dr. R. Weaver's Fourth, Fifth, and Sixth Amendment rights when it searched the physical premises of the GCC Clinic and then reviewed and produced to all defendants Dr. R. Weaver's attorney-client privileged material. *See* Dkt. 396 (Joint Mot.), 10-17.

The details related to that constitutional violation are set forth at length in the accompanying Joint Motion and will not be repeated here, but they involve the large-scale production of privileged documents to all defendants without Bates-numbers, making it impossible for the government to claw back the material when it attempted to do so one year later. *Id.* at 16. Thus not only was Dr. R. Weaver's privileged material reviewed by the government and disseminated to the other defendants, it was done in a manner that makes it impossible to rectify the situation.

In sum, Dr. R. Weaver's constitutional rights have been trampled repeatedly in this case. In three separate warrants, the government's conduct was egregious and

1    outrageous, without regard for the orders of the Court or Dr. R. Weaver's rights.

2           A district court has "supervisorial powers" which permit the Court to

3    supervise the "administration of justice" in order to deter "illegality" and to protect

4    "judicial integrity." *United States v. McClintock*, 748 F.2d 1278, 1284 (9th Cir.

5    1984). The court's exercise of its supervisory powers "is an appropriate means of

6    policing ethical misconduct by prosecutors." *United States v. Lopez*, 4 F.3d 1455,

7    1463 (9th Cir. 1993). A district court may utilize its supervisorial powers to dismiss

8    an indictment based on prosecutorial misconduct. *See United States v. Tucker*, 8

9    F.3d 673, 674 (9th Cir. 1993). "There are three legitimate grounds for a court's

10   exercise of supervisory power: 'to implement a remedy for the violation of a

11   recognized statutory or constitutional right; to preserve judicial integrity by ensuring

12   that a conviction rests on appropriate considerations validly before a jury; and to

13   deter future illegal conduct.'" *Lopez*, 4 F.3d at 1463 (quoting in part *United States v.*

14   *Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991)).

15          Dismissal is warranted here, as each of the three grounds are implicated. First,

16   the government repeatedly trampled on Dr. R. Weaver's constitutional rights. It

17   obtained two general warrants under false pretenses and then used those warrants to

18   rummage through Dr. R. Weaver's entire personal life, and that of his friends and

19   family. This, together with the wholesale seizure (and mass production) of Dr. R.

20   Weaver's most private records violated at least Dr. R. Weaver's Fourth Amendment

21   right "to be secure in [his] persons, houses, papers, and effects, against unreasonable

22   searches and seizures" by preventing "general, exploratory rummaging in a person's

23   belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). Moreover, as

24   detailed in the Joint Motion, the government violated Dr. R. Weaver's Fourth, Fifth,

25   and Sixth Amendment rights by seizing his privileged materials, and repeatedly

26   producing them to the Prosecution Team and Dr. R. Weave's co-defendants. *See*

27   Dkt. 396 (Joint Mot.), 10-17. The panoply of constitutional violations Dr. R. Weaver

28   has suffered alone necessitates dismissal.

1          Second, dismissal is appropriate because Dr. R. Weaver will face
2  fundamentally unfair considerations when at trial. Both the government and Dr. R.
3  Weaver's co-defendants have extensively reviewed and used Dr. R. Weaver's
4  privileged materials, and materials that never should have been seized in the first
5  place, including by devising theories of liability/defense based on their contents and
6  showing them to key parties and witnesses. *See Id.* at 20-21. This Court must
7  dismiss the charges against Dr. R. Weaver in order to put a stop to this
8  fundamentally unfair and unconstitutional prosecution and forthcoming trial, the
9  unfairness of which is only compounded by the entirely inappropriate, unnecessary,
10  and embarrassing invasion into and exposure of Dr. R. Weaver's most private
11  affairs.  While the government now says it will not use the videos of Dr. R. Weaver
12  having sex, it apparently considers as fair game for trial all of the other personal and
13  private information that falls far outside the scope of the warrants.
14          Finally, this Court should dismiss Dr. R. Weaver's charges to deter the
15  government from conducting itself in this manner in the future. The government's
16  misconduct here is outrageous, repeated, and spans a lengthy period of time. It
17  involves three different warrants. In each instance, the government ignored the
18  limits set by the warrants. In two of the instances, it misled the magistrate judges. In
19  all of them, it displayed a complete disregard for the rights of a defendant and the
20  responsibilities of an FBI agent and federal prosecutor. The harm inflicted here is
21  massive: the seizure and broad production of the most intimate records one can
22  imagine and attorney-client privileged material. Even if the Court finds that such
23  conduct does not rise to the level of a constitutional violation (it does), dismissal is
24  still appropriate because the government's conduct is indisputably outrageous. *See*
25  *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004) ("A court may exercise
26  its supervisory powers to dismiss an indictment in response to outrageous
27  government conduct," even if that conduct "falls short of a due process violation.")
28          Nor is there any excuse that would justify the government's actions here. The

1  simple truth is that the government either intentionally or recklessly ignored every

2  rule associated with obtaining and executing search warrants, particularly when they

3  involve sensitive searches of vast electronic material. The Ninth Circuit "embrace[s]

4  [that] reckless disregard for the prosecution's constitutional obligations" is sufficient

5  "to establish flagrant misbehavior" warranting dismissal. *See United States v.*

6  *Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). The government's repeated

7  disregard of the rules associated with obtaining and executing warrants, and its

8  repeated mistreatment of Dr. R. Weaver's privileged material and his and his

9  family's and friends' most private, intimate, and outside-the-scope-of-the-warrant

10 videos, photographs, and documents, evinces reckless disregard of the government's

11 constitutional obligations. This is especially the case as "[p]rosecutors are subject to

12 constraints and responsibilities that don't apply to other lawyers." *United States v.*

13 *Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). Namely, "[t]he function of the

14 prosecutor under the Federal Constitution is not to tack as many skins of victims as

15 possible to the wall. [Their] function is to vindicate the right of people as expressed

16 in the laws and give those accused of crime *a fair trial*." *Donnelly v. DeChristoforo*,

17 416 U.S. 637, 648–49 (1974) (Douglas, J., dissenting) (emphasis added). The

18 government here did the opposite, and there is simply no way to quantify the harm it

19 has inflicted on Dr. R. Weaver and his family and friends by having all aspects of

20 their lives displayed for all to see, as well as his communications with his attorneys

21 presented to his codefendants and the prosecutors. In short, the government has

22 engaged in a pattern of misconduct that must be acknowledged and deterred.

23      Compounding the egregious nature of this situation is the government's total

24 refusal to acknowledge its mistakes and to take meaningful corrective action. *See*

25 *Kojayan*, 8 F.3d at 1324 ("What we find most troubling about this case is not the

26 AUSA's initial transgression, but that he seemed to be totally unaware that he'd

27 done anything at all wrong, and that there was no one in the United States

28 Attorney's office to set him straight. Nor does the government's considered

1  response, filed after we pointed out the problem, inspire our confidence that this

2  kind of thing won't happen again."); *see also United States v. Cornejo,* 1996 WL

3  107271, at *15 (N.D. Cal. Mar. 5, 1996) (dismissing indictment where prosecutor

4  not only engaged in misconduct but then refused to take corrective action or

5  acknowledge the mistake). The government has had literally years to take ownership

6  and attempt corrective action, but has instead let Dr. R. Weaver's most personal

7  matters remain on display to his co-defendants and the government even after the

8  matter was raised by counsel. It similarly made no real effort to claw back the

9  privileged material it produced without Bates numbers, even when warned by co-

10 defendants' counsel that the clawback requests were impossible to comply with. The

11 government has consistently refused to do the right thing, and the easy thing: own

12 its misconduct and correct it. This unflinching disregard of Dr. R. Weaver's

13 constitutional rights and dignity indicates that the government would have no

14 problem doing this again, should the Court turn a blind eye.

15      If the Court is not yet convinced that dismissal is appropriate, then an

16 evidentiary hearing should be held to determine exactly how it happened that Dr. R.

17 Weaver's rights were repeatedly and brazenly trampled by the government, and

18 what the appropriate remedy might be.

19          **E.      At a Minimum, Everything Seized Pursuant to the Warrants
                      Should be Suppressed**

20

21      "The exclusionary rule generally bars admission of the evidence seized that

22 was beyond the scope of the warrant." *United States v. Sedaghaty*, 728 F.3d 885,

23 915 (9th Cir. 2013). It should be axiomatic that all evidence outside the categories of

documents the government was authorized to seize must be suppressed.

24      Here, if the Court does not dismiss Dr. R. Weaver's charges, the

25 government's "flagrant disregard for the terms of the warrant" demands suppression

26 of "all of the evidence, including evidence that was not tainted by the violation."

27 *United States v. Chen,* 979 F.2d 714, 717 (9th Cir. 1992) (internal quotation marks

28

21

1   omitted). This means even material within the scope of the warrants should be

2   suppressed. "[W]hen the violations of the warrant's requirements are so extreme that

3   the search is essentially transformed into an impermissible general search,"

4   suppression of all evidence seized, including within the scope of the warrant, is

5   appropriate. *Id.*; *see also United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978)

6   (suppressing all evidence where "agents did not confine their search in good faith to

7   the objects of the warrant, and that while purporting to execute it, they substantially

8   exceeded any reasonable interpretation of its provisions"); *United States v. Metter*,

9   860 F. Supp. 2d 205, 215–16 (E.D.N.Y. 2012) ("Because the government's conduct

10  shows flagrant disregard of the warrant's directives, all evidence from the search . . .

11  should be suppressed."); *United States v. Debbi*, 244 F. Supp. 2d 235, 238

12  (S.D.N.Y. 2003) (setting evidentiary hearing to determine "whether this is one of

13  those rare cases in which, because the seizure was indiscriminate and substantially

14  in excess of what the warrant provided, there must be a blanket suppression of

15  everything seized from the [] home, even including such items as were properly

16  seized," which is "appropriate only where the search '[1] greatly exceeds the bounds

17  of a warrant and [2] is not conducted in good faith.'") (*citations omitted*).

18      In this case, the government violated its obligations under the Fourth

19  Amendment by not only seizing, but then also producing—to every defendant—

20  virtually everything it received from Apple and Google other than potentially

21  privileged material. The government did not execute a search warrant as that phrase

22  is normally understood.  *See* Pixley Decl., ¶ 26 ("the searches in this case were not

23  conducted according to standard law enforcement procedures"). Nor did it do what

24  it told the magistrate judges who issued the orders it would do (after first misleading

25  them into signing general warrants). Instead, after receiving a production from

26  Apple and Google in response to an already overbroad warrant, the government

27  seized it all, filtered for potential privilege, and produced it to everyone. Among the

28  material seized was an outrageous amount of Dr. R. Weaver's sensitive and

1  irrelevant information, including his intimate videos, communications with family

2  and friends, pictures of his children, his and his wife's medical records, documents

3  detailing his personal purchases, stock trades, and even food delivery orders. The

4  government cannot reasonably contend that these records fall into any of the 14

5  enumerated categories set forth in the warrants. *See* Moore Decl., at Ex. A at 9-13;

6  *id.* at Ex. B at 9-13.

7         The government's bad faith here is manifest. **First**, it sought a warrant for

8  which it did not have probable cause, and hid from the magistrates that the data

9  produced by Apple and Google would far exceed that for which the government had

10 even tried to established probable cause. **Second**, it did not include any protocols in

11 the warrant to prevent the agents and prosecutors from rummaging through every

12 personal detail of Dr. R. Weaver's life. **Third**, the government did not isolate items

13 that would be responsive to the warrant, but instead—in blatant violation of the

14 court's orders—simply seizing everything, including thousands of the most intimate

15 but irrelevant files it could find. *See e.g.* Moore Decl., ¶¶ 15-31. These decisions are

16 an extreme departure from the government's normal operating procedure.

17        Such deliberate and intentional actions by the government constitute

18 conscious and flagrant disregard of the requirement that the government only seize

19 records within the scope of the warrants. Just as the Ninth Circuit found in *Rettig*,

20 the government agents here "did not confine their search in good faith to the objects

21 of the warrant, and [] while purporting to execute it, they substantially exceeded any

22 reasonable interpretation of its provisions." *Rettig*, 589 F.2d at 423. Moreover, the

23 fact that the government not only seized these records, but then also included them

24 in the records they produced to the other defendants in the case (other attorneys

25 described stumbling onto Dr. R. Weaver's intimate videos, and reacting with shock

26 and dismay), makes clear that the government's over-seizure was not motivated by

27 good-faith "considerations of practicality," *Tamura*, 694 F.2d at 597, but a complete

28 abdication of responsibility. For that reason alone, the Court should find that the

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT

1  government "flagrantly disregarded" the terms of the warrants and therefore order

2  the suppression of any information seized thereunder.

3       The suppression of the material obtained pursuant to the search warrants is

4  also required due to the government's "callous disregard for the rights of third

5  parties" and their privacy. *See CDT III*, 621 F.2d at 1174; *cf. Navarro*, 2019 WL

6  3877699, at *12 (suppression not warranted where defendant failed to establish

7  "'over-seizure of data' that exposed sensitive information about him or other

8  individuals not involved in criminal activity"). Unlike in *Navarro*, the evidence here

9  cannot be disputed: **The government seized and produced sensitive information**

10 **about third parties**, including but not limited to Dr. R. Weaver's family members;

11 the Association of National Guardsmen and their members, who in addition to

12 sharing financial information about their organization also exchanged private

13 communications that were not intended to be read by others; and, of course, the

14 women in the intimate videos recorded by Dr. R. Weaver. Not only did the

15 government make the inexplicable and outrageous decision to seize and produce

16 such records, the government also failed to redact any information or use any other

17 mechanism to preserve the privacy of those third parties.

18      *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) is instructive,

19 as the Second Circuit's test it applied for wholesale suppression is similar to the

20 Ninth Circuit's test as articulated in *Chen*, 979 F.2d 714 and *Rettig*, 589 F.2d 418, as

21 set forth above. The *Metter* Court explained that a warrant allowing the government

22 to take "***all*** information contained in the personal email accounts and computers at

23 issue" met the first prong for wholesale suppression, *i.e.*, whether government

24 agents "effect a 'widespread seizure of items that were not within the scope of the

25 warrant.'" *Metter*, 860 F. Supp. at 215–16 (emphasis added). Here, the warrants, as

26 drafted, covered not only Dr. R. Weaver's entire email accounts, but all of the other

27 voluminous data contained in his Apple and Google accounts, for which there was

28 no attempt to show probable cause. The government also never told the magistrates

the scope of what was called for by the warrants as drafted. The *Metter* court explained that the second prong for wholesale suppression—a lack of good faith—was satisfied by the government's failure to review the material seized in compliance with the procedure set out in the warrant, and, in that case, its "*threat[]* to provide all of the evidence seized and imaged to each defendant in the case." *Id.* (emphasis added). The court held that in "the interest of justice and fairness," it could not "permit the government to ignore its obligations. Otherwise, the Fourth Amendment would lose all force and meaning in the digital era and citizens will have no recourse as to the unlawful seizure of information that falls outside the scope of a search warrant and its subsequent dissemination." *Id.* at 216.

Here the government did more than *threaten* to produce all the evidence it seized: It obtained a general warrant for which it had no probable cause, put in place no procedure to avoid rummaging through Dr. R. Weaver's most personal affairs, and then seized and produced nearly everything to every defendant. This is the type of extraordinary abuse that *Metter* contemplated calls for wholesale suppression.

The production of such information is highly prejudicial to Dr. R. Weaver, as, besides violating his constitutional privacy rights, it also could be used against Dr. R. Weaver by the other potentially adverse parties in this case.

## IV.    CONCLUSION

For the reasons stated herein and in the contemporaneously filed Joint Motion of Ms. Soulati and Dr. R. Weaver to Suppress or Sever, Dr. R. Weaver respectfully requests the Court dismiss the charges against him based on the government's outrageous misconduct, or hold an evidentiary hearing to determine the appropriate remedy. At a minimum, Dr. R. Weaver requests that all evidence seized pursuant to the Apple/Google search warrants be suppressed and not used by the government (or any other party) for any purpose, as well as any evidence derived therefrom.

1    DATED:  March 14, 2022                Respectfully submitted,

2                                          Ariel A. Neuman

3                                          Bird, Marella, Boxer, Wolpert, Nessim, Drooks,
                                           Lincenberg & Rhow, P.C.
4

5

6                                          By:      /s/ Ariel A. Neuman

7                                                   Ariel A. Neuman

8                                          Attorneys for Defendant Ronald Seymour
                                           Weaver
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DR. R. WEAVER'S MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT