TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
EMILY Z. CULBERTSON
ALEXANDRA M. MICHAEL
NATALIE KANERVA
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
300 N. Los Angeles St., Suite 2001
Los Angeles, California 90012
Telephone: (202) 230-0673 (Culbertson); (202) 913-4777 (Michael);
    (202) 674-6617 (Kanerva)
E-mail: emily.culbertson@usdoj.gov; alexandra.michael@usdoj.gov;
    natalie.kanerva@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD SEYMOUR WEAVER, et al.,<br><br>Defendants. | No. 2:19-CR-527-ODW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT RONALD WEAVER'S MOTION TO DISMISS (ECF 398, 416) |

Plaintiff United States of America, by and through its counsel of record, the Fraud Section of the Criminal Division of the U.S. Department of Justice and Trial Attorneys Emily Culbertson, Alexandra Michael, and Natalie Kanerva, opposes defendant Ronald Seymour Weaver's ("defendant") Motion to Dismiss for Outrageous Government Misconduct and the alternative relief of blanket suppression sought in the Motion. (ECF 398, 416). The government further opposes defendant's request for an evidentiary hearing on the grounds that there is no substantial issue of disputed fact requiring resolution by evidentiary hearing.

1    The government's opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further evidence and argument

3  as the Court may permit.

4

5   Dated: April 4, 2022                    Respectfully submitted,

6                                            TRACY L. WILKISON
                                             United States Attorney
7
                                             SCOTT GARRINGER
8                                            Assistant United States Attorney
                                             Chief, Criminal Division
9
                                             JOSEPH BEEMSTERBOER
10                                           Acting Chief, Fraud Section

11                                                    /s/
12                                           EMILY Z. CULBERTSON
                                             ALEXANDRA M. MICHAEL
13                                           NATALIE KANERVA
                                             Trial Attorneys
14                                           Fraud Section, Criminal Division
                                             U.S. Department of Justice
15
                                             Attorneys for Plaintiff
16                                           UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     PROCEDURAL HISTORY ...............................................................................2

III.    STATEMENT OF FACTS .................................................................................2

     A.   Emails Show Defendant's Knowledge of Medicare Fraud at His Clinic ..........................................................................................................2

     B.   The FBI Executed Court-Authorized Search Warrants ................................3

     C.   The Government Produced Documents After Indictment Under A Protective Order ........................................................................................5

     D.   The Government Engaged with Defendant in Good Faith ...........................6

IV.     ARGUMENT......................................................................................................8

     A.   Dismissal Is Not an Available Remedy Here..........................................8

         1.   The documents seized were within the scope of the Warrants...........9

         2.   The government has acted in good faith.............................................12

         3.   Defendant is not prejudiced by seizure of records not used at trial. ................................................................................................15

     B.   Suppression Is Not Appropriate Here .........................................................16

         1.   The Warrants were not general warrants. .........................................17

         2.   The execution of the Warrants was reasonable. ...............................20

         3.   The agents relied on the Warrants in good faith...............................20

         4.   The appropriate remedy for improperly seized items is partial suppression of out-of-scope documents only.....................................21

     C.   No Evidentiary Hearing is Needed..............................................................25

V.      CONCLUSION.................................................................................................25

i

# **TABLE OF AUTHORITIES**

## **CASES**

*ACLU v. United States Dep't of Just.*,
  880 F.3d 473 (9th Cir. 2018) ................................................................ 4

*Andresen v. Maryland*,
  427 U.S. 475 (1976) .......................................................................... 13

*Davis v. United States*,
  564 U.S. 229 (2011) ..................................................................... 17, 21

*Hudson v. Michigan*,
  547 U.S. 586 (2006) .......................................................................... 17

*Steagald v. United States*,
  451 U.S. 204 (1981) .......................................................................... 17

*United States v. Aboshady*,
  951 F.3d 1 (1st Cir. 2020) ........................................................ 12, 17, 20

*United States v. Ankeny*,
  502 F.3d 829 (9th Cir. 2007) .............................................................. 16

*United States v. Bowen*,
  689 F. Supp. 2d 675 (S.D.N.Y. 2010) .................................................. 18

*United States v. Chapman*,
  524 F.3d 1073 (9th Cir. 2008) ..................................................... 9, 14, 15

*United States v. Chen*,
  979 F.2d 714 (9th Cir. 1992) .......................................................... 17, 22

*United States v. Comprehensive Drug Testing, Inc.*,
  621 F.3d 1162 (9th Cir. 2010) ............................................................ 22

*United States v. Crozier*,
  777 F.2d 1376 (9th Cir. 1985) ............................................................ 22

*United States v. Debbi*,
  244 F. Supp. 2d 235 (S.D.N.Y. 2003) .................................................. 24

*United States v. Deppish*,
  994 F. Supp. 2d 1211 & n.37 (D. Kan. 2014) ........................................ 18

*United States v. Hasting*,
  461 U.S. 499 (1983) ........................................................................ 9, 16

*United States v. Hay*,
  231 F.3d 630 (9th Cir. 2000) .............................................................. 18

*United States v. Henson*,
  848 F.2d 1374 (6th Cir. 1988) ............................................................ 17

ii

*United States v. Howell,*
    231 F.3d 615 (9th Cir. 2000) ................................................................... 25

*United States v. Johnston,*
    789 F.3d 934, 942 (9th Cir. 2015) ........................................................... 13

*United States v. Koiavan.*
    8 F.3d 1315 (9th Cir. 1993) ..................................................................... 15

*United States v. Leon,*
    468 U.S. 897 (1984) .......................................................................... 21, 22

*United States v. Lopez,*
    4 F.3d 1455 (9th Cir. 1993) ............................................................... 8, 9, 13

*United States v. McClintock,*
    748 F.2d 1278 (9th Cir. 1984) ................................................................... 8

*United States v. McDarrah,*
    No. 05 CR 1182 (PAC), 2006 WL 1997638 (S.D.N.Y. July 17, 2006) ............... 19

*United States v. Metter,*
    860 F. Supp. 2d 205 (E.D.N.Y. 2012) ........................................................ 24

*United States v. Navarro,*
    CR 18-02106-TUC-JAS (EJM), 2019 WL 3877699 (D. Ariz. 2019) .................. 24

*United States v. Nobles,*
    422 U.S. 225 (1975) ................................................................................ 4

*United States v. O'Dell,*
    483 F. Supp. 3d 757 (D. Alaska 2020) ....................................................... 22

*United States v. Rettig,*
    589 F.2d 418 (9th Cir. 1978) .................................................................... 23

*United States v. Ross,*
    372 F.3d 1097 (9th Cir. 2004) .................................................................. 16

*United States v. Schesso,*
    730 F.3d 1040 (9th Cir. 2013) ........................................................ 18, 19, 23

*United States v. Sedaghaty,*
    728 F.3d 885 (9th Cir. 2013) .................................................................... 22

*United States v. Tamura,*
    694 F.2d 591 (9th Cir. 1982) ........................................................ 17, 21, 22, 23

*United States v. Taylor,*
    764 F. Supp. 2d 230 (D. Me. 2011) ........................................................... 18

*United States v. Tucker,*
    8 F.3d 673 (9th Cir. 1993) ............................................................... 8, 9, 16

*Wheeler v. City of Lansing*,
  660 F.3d 931 (6th Cir. 2011) ...................................................................... 17

## **RULES**

Federal Rule of Criminal Procedure 16 .......................................................... 4, 14

Federal Rule of Criminal Procedure 41 ........................................................ 19, 24

Federal Rule of Evidence 602 ............................................................................ 25

Federal Rule of Evidence 702 ............................................................................ 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Ronald Weaver's ("defendant") request to dismiss the indictment, or in the alternative to suppress evidence obtained via a search of his Google and Apple email accounts, is unsupported and should be denied.

Dismissal is inapplicable here, as it is an "extreme remedy" reserved for flagrant, arbitrary, and capricious prosecutorial misconduct that causes substantial prejudice to the defendant. Most of the documents defendant references in his Motion were within the scope of magistrate-issued warrants and their seizure was supported by probable cause. Therefore, there has been no misconduct at all. Moreover, the government acted in good faith by: meeting its discovery obligations to all defendants in this case in producing defendant's materials pursuant to the Court's Protective Order; informing defendant about some of the materials the government intends to use at trial; attempting to confer with defense counsel about defendant's concerns; and clawing back particularly sensitive materials from its production. Moreover, the government does not intend to use any out-of-scope materials at trial; therefore, defendant will not be prejudiced by the seizure of any such materials.

Defendant's alternative request to suppress all the evidence seized via warrant from his Google and Apple email accounts is also unsupported. Blanket suppression is inappropriate here, as it "exacts a heavy toll on both the justice system and society at large," and so is a "last resort" used rarely and to address "flagrant disregard for the terms of the warrant." As described above, most of the documents in defendant's Motion were within the scope of the warrants; as such, the government did not flagrantly disregard the warrants. The government acted in good faith by following the terms of the warrants, which permitted seizure of medical and financial records, as well as materials that would help attribute the accounts to defendant and show the defendant's whereabouts. Defendant concedes that at least 4,800 emails were within the scope of the warrants and the government had established probable cause to seize them; there is no

1

cause to suppress such in-scope documents. Indeed, the government does not intend to use any documents seized outside the scope of the warrants. Therefore, the Court should deny defendant's alternative request to suppress the evidence from the search as well.

## II.    PROCEDURAL HISTORY

On February 7, 2022, defendant filed a Motion to Dismiss for Outrageous Government Misconduct. (ECF 398.) On March 14, 2022, defendant filed an Errata (ECF 415) and a revised Motion (ECF 416).

## III.   STATEMENT OF FACTS

### A.    Emails Show Defendant's Knowledge of Medicare Fraud at His Clinic

Between 2010 and 2017, defendant was listed as the rendering provider on $135 million of external counterpulsation ("ECP") treatments billed to Medicare by his company, Ronald Seymour Weaver MD, Inc. ("RSW"). (Declaration of D. Duncan Suh ("Suh Decl.") ¶ 2.) During this same time period, defendant collected approximately $50,000 on average per month in disability payments from Monarch Life Insurance, never mentioning in his quarterly reports to Monarch that he did any medical work whatsoever, instead claiming that he spent his days in various restful activities. (*Id.* ¶ 3.) Witnesses are also expected to testify that defendant was rarely, if ever, at the clinic where the ECP treatments were provided. (*See, e.g., id.* Ex. 1 at 4.)

Defendant is charged with conspiring with his codefendants to bill ECP treatments even though they knew or should have known that the patients did not have coronary artery disease ("CAD") or angina, the underlying conditions for which Medicare covers ECP. (ECF 1 ¶ 30.) Defendant's knowledge that the patients did not meet Medicare's criteria to cover ECP is expected to be a crucial issue at trial, especially because defendant was rarely at the clinic. His knowledge is supported by emails defendant sent and received in the email accounts at issue in defendant's motion: rsweavermd@me.com, obtained via warrant from Apple, Inc.; and ronaldweavermd@gmail.com from Google LLC (the "Accounts"). For example,

defendant Ronald Carlish emailed defendant in December 2013 and January 2014, informing him that certain medical decisions were being made "by totally unqualified, unlicensed, and medically uneducated staff personnel," and describing the "overt deceit" at the clinic, the "attempt to manipulate the ordering of EECP and other procedures with respect to economic considerations," and the "active recruitment for another cardiologist who would be more amenable to outside pressure to order remunerative procedures." (Suh Decl. Ex 5 at 2-3.) Defendant Carlish also described the "past 4 years when [he] was over ordering ECP," and his "ordering ECP on each patient [which] did not always ascribe to Medicare guidelines." (*Id.* at 4.) In September 2014, defendant Howard Elkin emailed defendant that "most of the patients referred to me for EECP evaluation DO NOT meet the revised criteria that YOU have set up for me to adhere to." (*Id.* at 6.) In April 2017, defendant Elkin emailed defendant that "the problem as you well know is that there are so many patients undergoing EECP at GCC that are on no meds, have no documentation of CAD <etc.," that "I think we are a bit lenient on EECP," that "the documentation of CAD is simply not there," and that "some these patients have been going to you for years with less than optimal documentation of disease." (*Id.* at 7.) Defendant's brother and codefendant John Weaver also emailed defendant in September 2017 that he and defendant "cannot trust anything that is said or done," and that defendant Nagesh Shetty "is just as culpable as the other minions" and "[this] is our licenses they are risking." (*Id.* at 9.) These emails are just a selection of the relevant evidence that defendant seeks to suppress despite that they are clearly within the scope of the magistrate-approved warrants authorizing their seizure.

## B. The FBI Executed Court-Authorized Search Warrants

On January 11, 2018, the government executed a search warrant at the Global Cardio Care clinic ("Premises Search Warrant"), located at 633 Aerick Street, Inglewood, CA 90301 ("GCC Clinic"). (ECF 416-3 at 28.) As described in the supporting affidavit for the Premises Search Warrant, at least three businesses operated

on site at the GCC Clinic: RSW; Global Cardio Care, Inc. ("GCC"), a medical administration company owned and operated by defendant Sara Soulati; and GCC Imaging, Inc., a testing facility owned and operated by GCC and defendant Soulati. (*Id.* at 29–30.) During the search of the GCC Clinic, the government made electronic copies (or "images") of certain documents (collectively, the "SW E-docs"). (Suh Decl. ¶ 5.) The filter review of the SW E-docs initially took place on an FBI document review platform. (Declaration of Bennett Starnes ("Starnes Decl.") ¶ 3.) After running filter terms, the filter team released materials to be reviewed by the investigating case agent, FBI Special Agent Duncan Suh. (*Id.*) Agent Suh conducted a scope review of the SW E-docs through the use of keyword terms (the "Scope Terms").[1] (Suh Decl. ¶ 5.)

On December 18 and 19, 2018, the government served two search warrants for data related to the Accounts. (ECF 416-3 at 240.) As noted in the Motion, the warrants for the Accounts (the "Warrants") were authorized by U.S. Magistrate Judges Maria A. Audero and Michael R. Wilner. (ECF 416 at 13; Suh Decl. Exs. 3, 4.)[2] The Warrants are two-step warrants, ordering Google or Apple to produce the Accounts to the government in Section B, "Information To Be Disclosed by Provider," then permitting the government to seize the information listed in Section C, "Information To Be Seized By The Government." (*See, e.g.*, Suh Decl. Ex. 3 at 10, 11.) The language in Section B, ¶ 13(a) seeking "[a]ll contents of all wire and electronic communications associated with the SUBJECT ACCOUNTS . . . after January 1, 2010," was standard in such warrants in this district at the time, as was the wording in Section C, ¶14(a)(i), allowing the search team to seize "[i]nformation relating to who created, accessed, or used the SUBJECT

---

[1] The government should not be required to provide the defendants with a detailed summary of the types of searches conducted or keywords used, as that would compel disclosure of the government's trial strategy and attorney work product. *See* Fed. R. Crim. Proc. 16(a)(2) ("[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"); *ACLU v. United States Dep't of Just.*, 880 F.3d 473, 483 n.7 (9th Cir. 2018) ("The attorney work-product privilege also applies in criminal proceedings." (citing *United States v. Nobles*, 422 U.S. 225, 236 (1975)).

[2] Although the Moore Declaration purports to attach the warrants for the Accounts as Exhibits A and B, those Exhibits are actually the Applications for the Warrants.

ACCOUNTS, including records about their identities and whereabouts." (*Id.* ¶ 7.)

Per the terms of the Warrants, the Filter Team ran filter terms and the Scope Terms on the electronic documents. (Starnes Decl. ¶ 4.) On or about August 23, 2019, the filter team released to the case team all of the documents from the Accounts which did not contain any Filter Terms, but did contain Scope Terms. (*Id.*)

### C. The Government Produced Documents After Indictment Under A Protective Order

On September 11, 2019, the government indicted seven defendants, including defendant. (ECF 1.) On September 18, 2019, the defendants first appeared before a judicial officer of the court in which the charges in this case were pending.

Defendant's codefendants sought production in discovery of all documents obtained from him by search warrant. (*See* Ex. 2 at 6 (demanding "[a]ll evidence obtained by search warrant with respect to the matters alleged in the indictment, or in the course of the investigation of such matters"); *id.* at 7 (demanding "[a]ll materials and information obtained (voluntarily, by subpoena, or by search warrant) from those charged in the indictment . . . or in the course of the investigation of such matters").)

On October 3, 2019, the government submitted a stipulated protective order which was agreed upon by all counsel in the case, including counsel for defendant. (ECF 112; Ex. 3.) On October 4, 2019, the Court entered the stipulated protective order, which provided that "[t]he government may produce to the defense . . . [d]ocuments and records containing sensitive information regarding the defendants and third parties . . . without redacting such information from the documents." (ECF 113 ¶ 1(b).) The government was instructed to identify such sensitive information by using the designation "CONFIDENTIAL INFORMATION – SUBJECT TO PROTECTIVE ORDER" in the accompanying cover letter. The Court ordered that the defendants and their counsel "shall use documents that are so designated only for the purposes of this criminal case, and shall not disclose the documents to non-parties." (*Id.* ¶ 3.) Defense counsel was also ordered to return or destroy all such documents after the criminal action

was concluded. (*Id.* ¶ 4.)

On October 11, 2019, one week after the Court entered its October 4, 2019 protective order, the government made its second, larger production of materials which included information from the Accounts. (Ex. 1.) The cover letter for the production designated the materials as "CONFIDENTIAL INFORMATION – SUBJECT TO PROTECTIVE ORDER." (*Id.*)

### D.   The Government Engaged with Defendant in Good Faith

The government has consistently engaged in good faith with counsel for defendant. In November 2021, in response to his counsel's questions about the evidence that the government planned to use at trial, the government provided his team with a one-hour presentation highlighting the numerous relevant emails obtained from the Accounts, which showed that he and others, including the other defendants in this matter, knew that the ECP prescriptions issued by the doctors at GCC did not meet Medicare's criteria for paying those claims. (Suh Decl. ¶ 9; *id.* Ex. 5.)

In October 2020, counsel sought information via interrogatory-style discovery requests about how the Warrants were executed, including seeking the internal work product and deliberation of the case and filter teams. (ECF 416-3 at 620.) The government responded that it did not have documents containing this specific information and/or any existing documents that did not consist of the internal process or deliberation of government attorneys. (*Id.* at 619, 615 ("[W]e would have to create documents to respond . . . the filter team might have some documentation, but we understand those documents contain material regarding the internal process or deliberation of the filter team.").) Notably, counsel did not ask for the entire production that had been received from Google and/or Apple, which the filter team does maintain, sealed so that the government cannot access it without Court order. (Starnes Decl. ¶ 5.)

After the government refused to provide responses to the interrogatory requests, counsel for defendant vaguely asserted that the "government's execution [of the

warrants] deviated in material respects" from the authorized process in the Warrants. The government asked for additional details about the purported "deviations," such as identification of the documents they were referencing. (ECF 416-3 at 615 (asking, "[C]ould you give us the bates numbers of these documents so that we can review them and respond?").) The government suggested that if there were "personal and irrelevant" materials, the parties could agree to segregate them or not use them (*id.*)*,* as would be the usual process consistent with Federal Rule of Criminal Procedure 12(b)(4)(A) and (B). Nevertheless, counsel refused because he could not identify a "small set of Bates numbers" and refused to accept any agreement or concession other than blanket suppression of all the materials seized from the Accounts. (*Id.*)

Nearly two years passed before counsel raised this issue with the government again. In January 2022, counsel told the government for the first time during a telephone call that he was planning to file a motion to dismiss and suppress all the evidence because the materials seized and produced from the Accounts contained personal, irrelevant information including several sex videos. Government counsel had not seen or known about any sex videos previously and asked for the bates numbers of these materials. Counsel for Ronald Weaver again refused to provide bates numbers and instead instructed government counsel to find them herself among the photos and videos in the Accounts. (Ex. 4 at 3 ("I suggest . . . you begin by reviewing the video and photo files that were seized and produced . . . .").) On February 2, 2022, the government advised Ronald Weaver's counsel that the government had identified eight videos of a sensitive and personal nature and would be sending a letter to defense counsel asking for the return or deletion of those videos. (*Id.* at 2–3.) Government counsel asked defendant's counsel to identify any similar materials that they would like clawed back. (*Id.*) Counsel refused again to provide any additional bates numbers and stated that they were planning to move forward with filing the Motion. (*Id.* at 2.) The government clawed back the eight files it had identified from defense counsel. (Ex. 5 at 2–3.)

7

When defendant filed the Motion, he identified two additional sex videos and one sex audio file in the production. (ECF 416-3 ¶¶ 18–19.) The government has since sent a similar clawback letter regarding those three files. (Ex. 5 at 4–5.)

## IV.    ARGUMENT

### A.    Dismissal Is Not an Available Remedy Here.

Defendant asks for dismissal under the Court's supervisory power. (ECF 416 at 17–21.) However, dismissal is not an available remedy here. First, many of the documents listed in the Motion are in fact within the scope of the Warrants and therefore the government committed no misconduct by seizing them. Second, the government has acted in good faith and therefore there was no misconduct at all, much less flagrant, arbitrary, or capricious misconduct. Third, any records that were seized outside the scope of the Warrants will not be used at trial and therefore their seizure causes no prejudice to defendant.

Dismissal is only available as a remedy in substantially limited circumstances. "Although [courts] have supervisory power, the circumstances under which [courts] may exercise that power are substantially limited." *United States v. Tucker*, 8 F.3d 673, 674 (9th Cir. 1993) (ECF 416 at 25). Dismissal is an "extreme remedy" that is only available where "the government's conduct . . . caused substantial prejudice to the defendant and [was] flagrant in its disregard for the limits of appropriate professional conduct." *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993) (vacating and remanding dismissal because abuse of discretion to dismiss the indictment, even if the prosecutor misled the court) (ECF 416 at 25). "We will not hold prosecutorial discretion to be violative of due process unless it is abused to such an extent as to be arbitrary and capricious." *United States v. McClintock*, 748 F.2d 1278, 1284 (9th Cir. 1984) (finding no clear basis in fact to invoke supervisory power, and ethical violations not so flagrant that reversal is required) (ECF 416 at 25).

"[A] federal court may not exercise its supervisory authority to reverse a

conviction or dismiss an indictment absent prejudice to the defendant." *Tucker*, 8 F.3d at 674; *see also United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) ("A court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice.") (quotations omitted) (ECF 416 at 27). "[T]he idea of prejudice entails that the government's conduct had at least some impact on the verdict and thus redounded to the defendant's prejudice." *Lopez*, 4 F.3d at 1464. In *United States v. Hasting*, the Supreme Court held that a federal court may not exercise its supervisory power to reverse a conviction when the alleged error is harmless. 461 U.S. 499, 505-07 (1983). The Court determined that "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." *Id.* at 506. Further, the Court stated that the "integrity of the judicial process carries less weight" when an error is harmless because "there is no 'reasonable possibility that the practice complained of might have contributed to the conviction.'" *Id.* (cleaned up). In observing that alternative remedies exist for errors which cause a defendant no prejudice, the Court stated that "[s]uch remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." *Id.* at 263.

1.     The documents seized were within the scope of the Warrants.

Defendant argues that none of the personal records seized by the government were within the scope of the Warrants. (*See* ECF 416 at 22–24.) However, most of the materials listed were within the scope of the Warrants, including medical records, financial records, vacation and travel records, and personal photographs and videos.

a.     *Medical Records*

Defendant complains that the medical records seized were outside the scope of the Warrants. (ECF 416 at 16.) However, medical records were a specific category permitted to be seized in the Attachment B of the Warrants. (Suh Decl. Ex. 3, § C, ¶ 14(a)(iii)

(permitting seizure of "[i]nformation relating to clinical files and patient records").) As such, medical records were within the scope of the Warrants.

###### b.   *Financial Records*

Defendant further complains that certain financial records were seized outside the scope of the Warrants (ECF 416 at 16.) But, again, the Warrants authorized seizure of financial records. (Suh Decl. Ex. 3, § C, ¶ 14(a)(xii) (permitting seizure of information relating to bank and brokerage account statements . . . checks and cancelled checks . . . financial instruments . . . for RONALD S. WEAVER"); *id.* ¶ 14(a)(xiii) (permitting seizure of "information related to financial and account records").) As such, financial records were within the scope of the Warrants.

###### c.   *Vacation and Travel Records*

Defendant complains that his vacation and travel records were seized outside the scope of the Warrants. (*See, e.g.*, ECF 416 at 16.) But the Warrants authorized the government to seize information relating to defendant's whereabouts: the Warrants permitted seizure of any records containing "[i]nformation relating to who created, accessed, or used the [Accounts], including records about their identities and whereabouts." (Suh Decl. Ex. 3, § C, ¶ 14(a)(i).)

Defendant's whereabouts are relevant to the government's case, and probable cause was established in the Warrants to seize that information. Defendant is charged with billing Medicare for medically unnecessary external counterpulsation ("ECP") as though he had provided it, even though he was rarely at the clinic and did not provide or supervise the ECP. (ECF 1 ¶ 30(e).) In the affidavits for the Warrants, probable cause was established that that Ronald Weaver was rarely at the clinic, yet his company billed Medicare for care he purportedly provided. (ECF 416-3, Ex. A, ¶ 28(e); *see, e.g.*, ¶ 42(a) (defendant is rendering provider on billing).) Indeed, the government intends to show at trial that defendant's company billed Medicare for millions of dollars of ECP while he was out of the country. As such, the government had probable cause, and was authorized

to seize records relating to defendant's whereabouts, including records regarding defendant's vacations, and photographs and videos showing him on vacation.

### d.   *Photographs, Videos, and Personal Documents*

Defendant complains that the government seized "private, sensitive, and potentially embarrassing" materials, including photographs and documents related to his personal life. (*See, e.g.*, ECF 416 at 15–16.) Attribution of the relevant emails to defendant is critical to the government's ability to use the emails seized from the Accounts at trial. The Accounts sent and received communications with defendant's codefendants in this case discussing that the ECP at the clinic did not meet Medicare's criteria and allegations of fraud at the clinic from employees and others. (*See, e.g.*, Suh Decl. Ex. 5.) The government intends to attribute these emails as having been received by defendant. As described above, the Warrants authorized the government to search through the Accounts and seize any records containing "[i]nformation relating to who created, accessed, or used the [Accounts], including records about their identities . . ." (*Id.* Ex. 3 § C, ¶ 14(a)(i).) The affidavit supporting the Warrants establish probable cause that the government would need such records to attribute the account's contents to defendant: the "complete contents of an email account may be important to establishing the actual user who has dominion and control of that account at any given time." (ECF 416-3, Ex. A, ¶ 92.) The affidavits also note that email accounts "may be registered in false names or screen names" or "may be also used by multiple people," and that, "[g]iven . . . the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account." (*Id.*) Therefore, "[f]or the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant requiring the PROVIDERS to turn over all information associated with the SUBJECT ACCOUNTS." (*Id.*) Accordingly, the identification of responsible persons was a legitimate purpose behind

the Warrants. The emails with and regarding defendant's friends and family and photographs of his family, for the very reason that they are uniquely personal, help to identify defendant as the person operating the Accounts. The photographs and videos which reflect defendant himself *per se* identify defendant.

The First Circuit's recent decision in the case *United States v. Aboshady*, 951 F.3d 1 (1st Cir. 2020), rejected claims that the government was not entitled to seize personal emails or photographs as evidence of attribution. The personal documents at issue in *Aboshady* included emails "between Dr. Aboshady and his wife, sensitive financial and medical information, and numerous personal and sensitive photographs." *Id.* at 6. These personal photographs included emails updating family on the progress of Aboshady's wife's labor and photographs of his wife in the delivery room. *Id.* The First Circuit reasoned that the personal nature of these documents "demonstrated that it was unlikely that anyone but Aboshady would have sent or received the emails" and therefore "that the email account that was alleged to be Aboshady's was in his control." *Id.* at 8. As in *Aboshady*, the government here seized personal photographs and documents because those records show that defendant is in control of the Accounts and therefore was the individual who sent or received the emails in the Accounts.

The seizure of defendant's personal, medical, financial, and vacation records, as well as his photos and videos, was authorized by the Warrants for this very purpose, and probable cause was established in the affidavits to seize them. Therefore, the government committed no misconduct by seizing them.

2.    The government has acted in good faith.

The government acted in good faith in executing the Warrants and producing the documents in discovery in this case; therefore, there is no flagrant, arbitrary, or capricious misconduct here. First, the Warrants authorized seizure of defendant's private documents; second, the government produced those documents to satisfy its discovery obligations, and did so under the Court's protective order; and, third, the government

engaged with defendant in good faith in an attempt to resolve his issues with the execution of the Warrants.

First, as discussed above, the Warrants on their face authorized the agents to seize the evidence about which defendant complains. Therefore, the agents' seizure of this information was objectively reasonable and cannot support the "extreme remedy" of dismissal.[3] *Lopez*, 4 F.3d at 1464; *see also Andresen v. Maryland*, 427 U.S. 475, 482–83 (1976) (ECF 416 at 18) (finding suppression of evidence obtained by search warrant unnecessary because agents believed at the time of the seizure that evidence could be used to show defendant's intent to defraud).

Second, the government produced defendant's personal materials in order to satisfy its discovery obligations both to defendant and his codefendants. By the time the prosecution team obtained the filtered materials from the Accounts, the case was only weeks from being charged. (*See* ECF 1; Starnes Decl. ¶ 4.) The Scope Terms had already been run on the Accounts (*id.*);[4] these terms had been developed when Agent Suh scope-reviewed the materials obtained via the Premises Search Warrant which had authorized the seizure of substantially the same categories of documents as the Warrants (Suh Decl. ¶ 5; *compare S*uh Decl. Ex. 2 at 4–7 and *id.* Ex. 3 at 11–14). Once the case was charged, the government had an obligation to produce defendant's records to him. *See* Fed. R. Crim. P. 16(a)(1)(B) (requiring production of any relevant written or recorded statement); *id.* 16(a)(1)(E) (requiring production of documents or data obtained from or belonging to the defendant). In addition, shortly after indictment, defendant's codefendants had also demanded "[a]ll evidence obtained by search warrant" and "[a]ll materials obtained . . . from those charged in the indictment." (Ex. 2 at 6, 7.) *See* Fed. R.

---

[3] Defendant argues that the magistrate judges who issued the Warrants were misled. (ECF 416 at 22–23.) But the affidavits explained that the government sought the entire account and why. (ECF 416-3, Ex. A, ¶ 92.) Moreover, the government used the standard language for cloud email warrants operative at the time that the Warrants issued. (Suh Decl. ¶ 7.) Clearly, the magistrates were not misled here.

[4] The Ninth Circuit has held that using search terms on voluminous materials can be reasonable. *United States v. Johnston*, 789 F.3d 934, 942 (9th Cir. 2015). Indeed, the Warrants here expressly contemplated that the executing agents would do so. (Suh Decl. Ex. 3 at 6–8.)

Crim. P. Rule 16(a)(1)(E) (obligating the government to provide documents material to the defense). In light of its discovery obligations and to avoid the issues that can arise when the government <u>does not</u> produce discovery in a timely way, the government produced the released materials from the Accounts in its next production. *See Chapman*, 524 F.3d at 1085 (ECF 416 at 27) (dismissing indictment because prosecution failed to produce documents, among other reasons).

Before producing the materials, the government took precautions to protect defendant's privacy outside of this litigation. Specifically, the government asked all defendants to stipulate to a protective order, which was then entered by the Court. (ECF 113.) The government then produced information from the Accounts under the Court's protective order. (Ex. 1.) This is the same level of protection afforded to the records of thousands of third parties to this litigation, including the Medicare beneficiaries whose medical records, and insurance and financial information were produced to the defendants because that same information was used to carry out the charged scheme.

Third, the government engaged in good faith with defendant in an attempt to resolve his issues with the execution of the Warrants, but defendant sought to file this Motion than provide the government an opportunity to meaningfully respond to his complaints. (ECF 416-3 at 615; Ex. 4.) Federal Rule of Criminal Procedure 12 (b)(4)(A) and (B) provides a procedure for conferring about whether the government intends to use certain evidence at trial so that motions to suppress can be appropriately addressed only to evidence the government intends to use. Nevertheless, defense counsel refused to provide the bates numbers for any documents he believed to be out of scope. (ECF 416-3 at 615.) The government suggested that if there are "personal and irrelevant" materials, the parties could agree to segregate them or not use them. (*Id.*) But counsel refused to accept any agreement or concession other than blanket suppression of all the materials seized from the Accounts. (*Id.*)

In contrast to defense counsel's refusal to engage in a meaningful meet and confer,

1   the government provided defense counsel with an hour-long presentation of relevant

2   evidence, in which numerous emails obtained from the Accounts were discussed. (Suh

3   Decl. ¶ 9; *id.* Ex. 5.) All of those emails are clearly within the scope of the Warrants, and

4   none of them are mentioned in the Motion. Furthermore, after counsel raised for the first

5   time in January 2022 that defendant's sex videos were in the materials produced from

6   the Accounts (but also refused to provide bates numbers for those videos) (Ex. 4 at 2),

7   the government identified those videos and swiftly clawed them back from the

8   defendants. (Ex. 5 at 2–3.) Government counsel asked if there were similar materials that

9   should also be clawed back, counsel refused to provide additional bates numbers. (Ex. 4

10  at 2.) Nonetheless, three additional similar files were identified in the Motion (ECF 416-

11  3 ¶¶ 18–19); the government has since clawed those back as well. (Ex. 5 at 4–5.) Clearly,

12  based on the vast amount of detail in the Motion, counsel had bates numbers available

13  which he could have provided to the government to meaningfully meet and confer about

14  these documents, but declined to do so.

15          Defendant cites *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993), in support

16  of dismissal here, but that case involved a prosecutor's refusal to turn over information

17  about a cooperating witness for the government's strategic benefit. *Id.* at 1323. Here, the

18  government gains no strategic advantage by producing materials from the Accounts.

19  Indeed, the government intends to only use materials that are within the scope of the

20  Warrants at trial. Government counsel produced the materials from the Accounts and

21  attempted to resolve defendant's concerns in good faith. As such, dismissal is

22  unwarranted here.

23                  3.      Defendant is not prejudiced by seizure of records not used at trial.

24          "A court may dismiss an indictment under its supervisory powers only when the

25  defendant suffers substantial prejudice, and where no lesser remedial action is available."

26  *Chapman*, 524 F.3d at 1087 (cleaned up). Even if the government did seize records

27  outside the scope of the Warrants, defendant is not prejudiced unless those documents

28

are used at trial. The government does not plan to introduce out-of-scope material; therefore, their seizure creates no prejudice to defendant at trial. *See Tucker*, 8 F.3d at 674–75 ("[S]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error.") (ECF 416 at 25) (quoting *Hasting*, 461 U.S. at 505–07); *United States v. Ross*, 372 F.3d 1097 (9th Cir. 2004), *on reh'g in part,* 138 Fed. App'x 902 (9th Cir. 2005) (dismissal unwarranted because no government misconduct prejudiced Ross) (ECF 416 at 26). Specifically, the government does not intend to use any sex videos or other pornography at trial. (ECF 416 at 15.)

Dismissal is unwarranted here: the documents listed in the Motion are within the scope of the Warrants; the government has acted in good faith; and defendant is not prejudiced by the issues raised in the Motion. For these reasons, the government respectfully requests that defendant's motion to dismiss be denied.

### B.   Suppression Is Not Appropriate Here

Despite the clear case law to the contrary, defendant calls for blanket suppression of all the evidence seized from the Accounts, arguing both that the Warrants were general warrants (ECF 416 at 17–23) and that the government flagrantly disregarded the terms of the Warrants (*id.* at 28–32). However, none of the authority cited by defendant supports blanket suppression here. The Warrants were not general warrants; rather, they specified the places to be searched and the items to be seized. Moreover, the execution of the Warrants was reasonable. Therefore, defendant fails to meet his burden to demonstrate that the search here was unreasonable. *See United States v. Ankeny*, *502 F.3d 829, 836 (9th Cir. 2007) (defendant bears the burden of demonstrating that a warrant-based search is unreasonable under the Fourth Amendment).

"Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the

criminal loose in the community without punishment." *Davis v. United States*, 564 U.S. 229, 237 (2011) (citations omitted). For this reason, "[s]uppression of evidence . . . has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). The significant costs of suppression have led the Supreme Court to deem it "applicable only . . . where its deterrence benefits outweigh its substantial social costs." *Id.*

In the absence of "flagrant disregard for the terms of the warrant," a district court need not "suppress all of the evidence, including evidence that was not tainted by the violation." *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992). "Only those items which fall outside the scope of the warrant need be suppressed." *Flores*, 802 F.3d at 1046 (cleaned up); *see also United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982) (declining to order a new trial where, despite unlawful seizure of items outside the scope of the warrant, "[a]ll of the documents introduced at trial were seized and retained lawfully because described in and therefore taken pursuant to the valid search warrant"); *Aboshady*, 951 F.3d at 9 ("The remedy in the case of a seizure that casts its net too broadly is . . . not blanket suppression but partial suppression.").

### 1.   The Warrants were not general warrants.

Defendant argues that the Warrants were general warrants (ECF 416 at 10–12), but he is mistaken. The Warrants do not remotely resemble general warrants. A general warrant "specified only an offense—typically seditious libel—and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald v. United States*, 451 U.S. 204, 220 (1981); *see also Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) ("[G]eneral warrants that fail to describe with particularity the things to be searched for and seized 'create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure'") (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The Warrants specified with particularity the place to be searched in Attachment A and

the items to be seized in Attachment B. (Suh Decl. Exs. 3, 4.) Such two-step warrants are contemplated by the Federal Rule of Criminal Procedure 41(e)(2)(B) and the accompanying Notes. Fed. R. Crim. P. 41, comm. n. (e)(2) 2009 amend. ("This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."). Courts have also widely approved the two-step procedure for executing warrants for electronic evidence. *See, e.g.*, *United States v. Schesso*, 730 F.3d 1040, 1046 (9th Cir. 2013) (upholding government's seizure of electronic data for a subsequent off-site search where there was a fair probability that evidence would be found on the defendant's personal computer and other electronic devices) (ECF 416 at 23); *United States v. Hay*, 231 F.3d 630, 637–38 (9th Cir. 2000) (holding that officers were justified in removing computers for off-site search "because of the time, expertise, and controlled environment required for a proper analysis"). The government's use of Federal Rule of Criminal Procedure 41's two-step procedure for warrants for electronic evidence was reasonable under the Fourth Amendment.

Defendant objects that the warrants are general warrants because they required Apple and Google to produce "all records and information" associated with defendant's accounts. (ECF 416 at 18.) But the Ninth Circuit has "repeatedly found broad searches constitutional" with limited evidence. *Schesso*, 730 F.3d at 1046–47 (citing cases). Also, several district courts have upheld warrants seeking "all information associated with" a cloud email account. *See, e.g.*, *United States v. Deppish*, 994 F. Supp. 2d 1211, 1219–21 & n.37 (D. Kan. 2014) (noting that "nothing in § 2703 precludes the Government from requesting the full content of a specified email account," and concluding that such a search is not a "general search"); *United States v. Taylor*, 764 F. Supp. 2d 230, 232, 237 (D. Me. 2011) (upholding search of "all information associated with an identified Microsoft hotmail account"); *United States v. Bowen*, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010) (Fourth Amendment does not require authorities to "ascertain which e-

mails are relevant before copies are obtained from the internet service provider for subsequent searching"); *United States v. McDarrah*, No. 05 CR 1182 (PAC), 2006 WL 1997638, at *9–10 (S.D.N.Y. July 17, 2006) (denying motion to suppress seizure of "[a]ll stored electronic mail and other stored content information presently contained in" a specified email account), *aff'd,* 351 Fed. App'x 558 (2d Cir. 2009).

Defendant also objects that the warrants do not contain "instruction" regarding the "procedural mechanisms" for executing the search, such as "targeted or key-word searches." (ECF 416 at 20–22.) But Ninth Circuit precedent does not require search protocols to be included in warrants.[5] *See Schesso*, 730 F.3d at 1049 (noting that search protocol was not required under binding precedent). In *Schesso*, the court reversed the suppression of images and videos of child pornography gleaned using a search warrant that did not include a search protocol and encompassed the entirety of a suspected child pornography distributor's computer system and collection of digital storage devices. *Id.* at 1051, 1044. The Ninth Circuit reasoned that the investigators in *Schesso* only seized the devices covered by the warrant. *Id.* at 1049. Similarly, here, the government only obtained the Accounts, and not the email accounts of any unrelated third parties. Moreover, the Ninth Circuit found it important that the government was not relying on the plain view doctrine to use evidence that was outside of the scope of the warrant. *Id.* Similarly the government here is not relying on "plain view" to use out-of-scope materials.

Defendant further contends that the warrants here violate FBI protocols and a disregard of defendant's privacy, citing to the declaration of Bruce Pixley. (*See, e.g.,* ECF 416 at 18 ("the warrants are gross departures from the FBI's standard practices, and evince a complete disregard of Dr. Weaver's privacy . . . .");[6] *id.* at 20 (the warrants'

---

[5] Defendant relies heavily on magistrate judge decisions in other districts in which the magistrate refused to issue a warrant that lacked details about the proposed search process. (ECF 416 at 21–22, citing cases.) These are inapplicable here: the magistrates here approved the Warrants as written, consistent with Ninth Circuit precedent.

[6] Absolutely nothing in Mr. Pixley's materials or background establish him as an expert on privacy.

lack of instruction on search protocols is "contrary to FBI training and best practices").)
But nowhere in Mr. Pixley's CV or other materials is he established as an expert on the
FBI's standard practices relating to obtaining or executing search warrants—he does not
appear to have ever worked as a special agent with any federal agency and fails to
explain the basis for his purported knowledge of FBI protocols. Notably here, the
wording of which Mr. Pixley primarily complains, "all records and other information"
(ECF 416-4 at 5), was standard language at the time for such warrants. (Suh Decl. ¶ 7.)
Clearly, using standard language common to virtually every similar warrant in the
district does not violate the standard practices or protocols of the relevant federal
agencies.

### 2.   The execution of the Warrants was reasonable.

As described in Section IV(A)(2) above, the execution of the Warrants was
reasonable and the government acted in good faith. The seizure of defendant's personal,
medical, financial, and vacation records, as well as his photos and videos, were
authorized by the Warrants, and probable cause was established in the affidavits to seize
them. (Suh Decl. Ex. 3, § C, ¶ 14(a)(iii); ¶ 14(a)(xii); *id.* ¶ 14(a)(xiii); ¶ 14(a)(i).)
Therefore, the government committed no misconduct by seizing them. *Aboshady*, 951
F.3d at 8 (rejecting claims that government not entitled to seize records as evidence of
attribution). The Accounts were filter- and scope-reviewed using search terms. (Suh
Decl. ¶ 5; Starnes Decl. ¶ 4.) The government produced these records to satisfy its
discovery obligations both to defendant and his codefendants, and the government took
steps to protect defendant's privacy by producing the records pursuant to the Court's
Protective Order. (Ex. 1; ECF 113.) Finally, the government clawed back the sex videos
once those were identified. (Ex. 5.) As such, execution of the Warrants was reasonable.

### 3.   The agents relied on the Warrants in good faith.

Even if the Court determines that the government lacked probable cause or
authority to seize photos, videos, personal emails, and travel records to prove

defendant's whereabouts and attribution of the account to him, the Court should decline to suppress any evidence under the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that suppression is not an appropriate remedy where evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Id.* The Supreme Court has expressed that since the good-faith exception announced in *Leon*, "we have never applied the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct. If the police . . . reasonably relied on a warrant in conducting their search, or on an erroneous warrant record in a government database, the exclusionary rule would not apply." *Davis v. United States*, 564 U.S. 229, 240 (2011) (cleaned up). Where the executing officers act in "an objectively reasonable good-faith belief that their conduct is lawful" or "involved only simple, isolated negligence," exclusion cannot "pay its way." *Id.* at 238–39.

Here, as discussed above, the Warrants authorized seizure of most of the documents about which defendant complains. Therefore, the government's execution of the Warrants pursuant to their terms on their face was in good faith and does not support suppression.

### 4. The appropriate remedy for improperly seized items is partial suppression of out-of-scope documents only

If the government's seizure was overly broad, only the out-of-scope documents should be suppressed; if the Warrant improperly allowed seizure of too many documents, the improperly seized portions should be severed and only articles seized pursuant to the invalid portions need be suppressed.

"[T]he exclusionary rule does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well." *Tamura*, 694 F.2d at 597. "Only those items which fall outside the scope of a warrant need to be suppressed." *Flores*, 802 F.3d at 1046; *see also*

1  *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) (remanding "to the district

2  court to identify and suppress only those items which fall outside of the scope of the

3  warrant").

4        Here, defendant appears to concede that the government established probable

5  cause to seize defendant's email correspondence and that at least 4,800 of the documents

6  seized were within the scope of the warrant. (*See* ECF 416 at 12 (warrant "arguably sets

7  forth probable cause to obtain Dr. R. Weaver's email correspondence related to the

8  scheme"); ECF 416 at 9–10, citing ECF 416-2 at ¶ 13 (4,854 of the documents produced

9  by the government contain search terms or names that defendant concedes are relevant to

10  this case)). At a minimum, any documents within the scope of the Warrants should be

11  admissible at trial. *See United States v. O'Dell*, 483 F. Supp. 3d 757, 763–64 (D. Alaska

12  2020) ("Suppression is limited to the evidence the government plans to introduce at

13  trial.").

14        It is notable that many of the cases relied on by defendant did not result in blanket

15  suppression, even where the court found a defect either with the warrants or the

16  execution of the warrants. *See United States v. Sedaghaty*, 728 F.3d 885, 915 (9th Cir.

17  2013) (rejecting defendant's "contention that the violation requires suppression of *all of*

18  the evidence seized," and remanding back to the district court to determine whether the

19  documents used at trial were within the scope of the warrant and/or implicated the

20  principles in *Leon*) (ECF 416 at 29); *Chen*, 979 F.2d at 718 (reversing district court's

21  blanket suppression where agents exceeded the warrant but were "motivated by

22  considerations of practicality rather than by a desire to engage in indiscriminate fishing")

23  (ECF 416 at 28); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162,

24  1173 (9th Cir. 2010) (concerning not a motion to suppress but a motion to return

25  property under Fed. R. Crim. P. 41 (g), which is "broader than the exclusionary rule")

26  (ECF 416 at 19). The Ninth Circuit in *Tamura* did not support blanket suppression, even

27  though the agents had indiscriminately seized of all files found in an office based on a

28

warrant that authorized the officers to search for only three categories of records for evidence of various alleged crimes. *See* 694 F.2d at 594–95 (ECF 416 at 23, 30). The Ninth Circuit "declined to suppress evidence in *Tamura* because although the search exceeded the scope of the warrant, the specific documents introduced at trial were within its scope." *Schesso*, 730 F.3d at 1051.

In the limited cases that the defendant has cited in the Ninth Circuit finding flagrant disregard of a warrant to justify blanket suppression, the government has acted dishonestly. In *United States v. Rettig*, the agents had sought an arrest and search warrant from a federal magistrate related to Rettig's suspected cocaine distribution conspiracy; the magistrate granted the arrest warrant but denied the search warrant. 589 F.2d 418, 420 (9th Cir. 1978) (ECF 416 at 29). When executing the arrest warrant at Rettig's residence the following day, the agents saw Rettig flushing marijuana down the toilet. *Id.* They then obtained a search warrant for his residence from a different judge, a state magistrate, permitting them to seize evidence of marijuana distribution, but the agents never disclosed the cocaine conspiracy or the denied warrant application the previous day. *Id.* The agents then searched Rettig's residence and seized white powder and other evidence believed to be related to a cocaine conspiracy. *Id.* Rettig was charged with and convicted of the cocaine conspiracy. *Id.* at 419. The Ninth Circuit stated that search warrant obtained from the state judge "was used as an instrument for conducting the search for which permission had been denied on the previous day, a search that pertained to evidence of the cocaine charge, not to the possession of marijuana." *Id.* at 421. The Ninth Circuit also stated that the agents' failure to disclose "enlighten[ed] our review of the search and seizures that actually took place as we determine whether or not the agents went beyond the confines of the warrant." *Id.* at 422. The court found that a "judicial officer cannot perform the function of issuing a warrant particularly describing the places to be searched and the things to be seized, and of supervising the proper return of such process, where the police fail to disclose an intent to conduct a search the

purposes and dimensions of which are beyond that set forth in the affidavits." *Id.* at 423. This is inapplicable here: the government sought the warrant for evidence of conspiracy to commit health care fraud and health care fraud (ECF 416-3 at 18–19); the defendant is now charged with those same crimes (ECF 1); and the government is not seeking to use evidence found in the Accounts to prove any other crime at trial. Even more importantly, the government did not fail to disclose any previously denied warrant in its application, nor did it go forum shopping to different judges in order to obtain a warrant that had been previously denied.

Defendant also cites district court decisions in other circuits and unpublished district court decisions which are not applicable on these facts. In *United States v. Debbi*, 244 F. Supp. 2d 235 (S.D.N.Y. 2003) (ECF 416 at 29), the government failed to return personal evidence not covered by the warrants to defendant even after the Court on oral argument encouraged the government to sift through and identify the evidence that was responsive to the warrant. *Id.* at 238. On the contrary, here, the defendant refused to inform the government of what documents he claimed exceeded the scope of the warrant for nearly two years, waiting until this Motion was filed; the government here did claw back certain sensitive videos in response to defendant's concerns; and the government here has not ignored any court suggestion to further sift through the evidence. (ECF 416-3 at 615; Exs. 4, 5.) In *United States v. Metter*, the court expressed concern that the government had not even begun to "conduct its privilege review of the electronic evidence seized" fifteen months after the warrant was executed, and had "no plans whatsoever to begin review of that data." 860 F. Supp. 2d 205, 211, 215 (E.D.N.Y. 2012) (ECF 416 at 29). Here, the filter review was conducted and the nonprivileged materials released to the government shortly before charging; and those released materials were promptly produced in discovery. (Starnes Decl. ¶ 4; Ex. 1.) In *United States v. Navarro*, CR 18-02106-TUC-JAS (EJM), 2019 WL 3877699, *15 (D. Ariz. 2019) (ECF 416 at 31), the unpublished decision of an Arizona magistrate judge, the

court found that the government waited too long to obtain a warrant to search a cell phone after the government determined that the consent they obtained was insufficient to cover the phone. Here, those issues are not present; the government obtained the data for the Accounts pursuant to the lawfully issued Warrants.

Thus, even if the Court were to agree with the defendant that the government has unconstitutionally retained non-responsive documents from the execution of the Warrants, the suppression of all documents from the Accounts would not be an appropriate remedy. The Warrants were not general warrants; rather, they specified the places to be searched and the items to be seized. Moreover, the execution of the Warrants was reasonable and in good faith. Therefore, the government requests that defendant's motion to suppress be denied.

### C.   No Evidentiary Hearing is Needed

Defendant is not entitled to an evidentiary hearing on his Motion. "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). As described above, Bruce Pixley's declaration should be disregarded as his opinions are unsupported by relevant training, experience, or facts. Fed. R. Evid. 602; 702. The remaining declarations do not present a "significant disputed factual issue" requiring an evidentiary hearing to resolve. Howell, 231 F.3d at 621 (quotation omitted).

## V.   CONCLUSION

Because the government properly seized the evidence outlined in the Motion and has acted in good faith in executing the Warrants and producing the seized materials from the Accounts, the government respectfully requests that defendant's motion to dismiss and/or suppress evidence seized via the Warrants be denied.